Hans SCHMOLDT and Jimmie L. Schmoldt, husband and wife, and Hans Schmoldt doing business as Schmoldt Engineering Services Company of Bartlesville, Oklahoma, and Charley Hawkins, Plaintiffs in Error,

v.

Cecil OAKLEY, doing business as Oakley Pontiac-Buick Motor Company of Bartlesville, Oklahoma, Defendant in Error.

No. 40367.

Supreme Court of Oklahoma.

March 17, 1964.

Holliman, Brewer & Worten, Bartlesville, for plaintiffs in error.

Harris & Graham, Bartlesville, for defendant in error.

WELCH, Justice.

In 1961 plaintiff sold a new Pontiac automobile to Hans Schmoldt, defendant, delivering with it a warranty covering the first 12,000 miles that the car was driven. There was a transmission failure after the car had been driven approximately 30,000 miles which resulted in expense of $561.00 for repair thereof for which sum defendant made claim to plaintiff, exhibiting him a letter which he prepared to send the Pontiac Division of General Motors Corporation, and unless his claim was honored satisfactorily to him, he would make it known generally in the community that he had been ill treated. Upon the rejection of his claim defendant displayed upon his said Pontiac automobile a sign $7 \times 2\frac{1}{2}$ feet in size which read:

"LIKE TO HAVE A REAL LEMON —BUY THIS PONTIAC BY GENERAL MOTORS Ed 3–4607 FOR DETAILS,"

and then drove and parked his car upon the street and in the vicinity of plaintiff's place of business. Upon the sign, suspended by strings, defendant hung real lemons.

Plaintiff's petition alleged wrongful interference with plaintiff's business, that he was the only manufacturer's franchised Pontiac dealer in the vicinity, and that defendant's conduct was injurious to his business; that defendant's conduct was motivated by an attempt by defendant to get from plaintiff that to which he was not entitled by resort to conduct which utilized threats, intimidation and coercion.

Material occurrences at trial are that after the close of plaintiff's evidence the defendants moved for judgment denying the injunction. When that was overruled the defendants elected to stand on the alleged insufficiency of plaintiff's evidence, and the court rendered judgment for plaintiff granting permanent injunction.

In their briefs the contention of counsel for the defendants is that the court's equity jurisdiction does not extend to the enjoining of libel or slander, and that the court does not have the power to restrain freedom of speech and of the press, guaranteed by the United States Constitution, Amendments 1 and 14, Sec. 1, and the Oklahoma Constitution, Art. 2, Sec. 22.

Plaintiff does not oppose the assertion of lack of jurisdiction of a state court to restrain utterance of a libelous slanderous statement that amounts to nothing more than an expression of opinion, but asserts that equity jurisdiction extends to protect the property right of plaintiff as the exclusive holder of a Pontiac dealership in the area from publication of matter defaming a Pontiac car.

In considering the issues here it must be said at the outset that for the plaintiff to obtain the relief prayed in his petition he must bring himself within the exceptions to two general principles denying injunctive relief from publishing defamatory matters. The first general principle is that equity does not exercise jurisdiction to enjoin the commission of crimes, including criminal libel; and the second general principle is that the con-

stitutional guaranty of free speech as a general rule prohibits both the courts and the Legislature from putting previous restraint on publications. That there are exceptions to these general principles is recognized, but the plaintiff in bringing his suit for such relief must take upon himself the burden of showing facts which bring his suit within these exceptions.

43 C.J.S. Injunctions § 135, p. 680, reads:

"According to most authorities, the operation of the rule that equity will not restrain a mere libel or slander is not affected by the fact that the false statement may injure plaintiff in his business, profession, or trade, or as to his credit or property, in the absence of acts of conspiracy, intimidation or coercion, or where no breach of trust or of contract appears, because the party wronged has an adequate remedy at law by action for damages or criminal prosecution."

Denial of injunctive relief against trade libels has generally been based upon one or more of three reasons: (1) the adequacy of the remedy at law, (2) the right of the defendant to a trial by jury, and (3) the constitutional right of free speech. These reasons are urged by the defendants, as plaintiffs in error here, reliance being placed upon the Marlin Fire Arms Company v. Shields, 171 N.Y. 384, 64 N.E. 163, 59 L.R.A. 310; Singer v. Romerrick Realty Corp., 255 App.Div. 715, 5 N.Y.S.2d 607; Dailey v. Superior Court of City and County of San Francisco et al., 112 Cal. 94, 44 P. 458, 32 L.R.A. 273, and Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. 133, 67 S.W. 391, 56 L.R.A. 951, as showing that the court may not or will not afford plaintiff injunctive relief under the circumstances.

Plaintiff sets forth the following quotation from the decision in American Malting Company v. Keitel, (C.C.2d) 209 F. 351, to-wit:

"In all that has been said we have not lost sight of the fact that the courts have sometimes issued injunctions to restrain the publication of false statements injurious to business or property. The cases in which such a jurisdiction has been assumed have been those which have involved conspiracy, intimidation, or coercion."

It thus may be seen that the circumstances of the case at bar are considered by plaintiff to be within the conspiracy, intimidation or coercion exception to the rule set forth by the above quotation from 43 C.J.S. supra.

In support of an affirmance of the judgment or decree of the trial court plaintiff has strongly relied upon the Alabama case of Carter et al. v. Knapp Motor Co., 243 Ala. 600, 11 So.2d 383, 144 A.L.R. 1177, which held that an automobile dealer who has a valuable selling franchise from the manufacturer of automobiles is entitled to an injunction to restrain a defendant who, for the purpose of coercing the complainant to give him another car, exhibits in the street a car bearing a sign disparaging the quality of the cars sold by him. Stating that it was clearly shown that the defendants therein were activated by but one motive, that of coercing the complainant, who was under no obligation to do so, to give them an automobile, that court said the facts before it constituted an exception to the rule prohibiting the exercise of injunctive relief against slander and libel where that which is harmed are property rights.

The facts involved in that case at first glance appear to have been similar to those in the case at bar. However, the briefs of the parties presented to the appellate court, published by A.L.R. in connection with the reported decision, do not show that the constitutional prohibition against restraint of free speech was presented, as here; nor did the opinion undertake any reconciliation with the constitutional inhibition against restraint of freedom of speech. And, in that particular a distinction between the case and the one before us exists. The same may be said of Menard v. Houle, 298 Mass. 546, 11 N.E.2d 436,

also relied upon by plaintiff. Both of those cases were considered in the W. Va. decision, Kwass v. Kersey, 139 W.Va. 497, 81 S.E.2d 237, 47 A.L.R.2d 695, which held that the defamation of a lawyer does not involve such interference with property rights as would authorize a suit for injunction. An enlightening annotation concerning the subject begins at page 715 following the decision as reported in 47 A.L.R. 2nd.

■ The intangible quality of the property right of the lawyer plaintiff in that case, but for which one infers the result might have been otherwise, is not so prevalent in the circumstance before us here. The plaintiff's business in this case is definitely a property right. Plaintiff's business is such as is said in 28 Am.Jur. 315, Injunctions, Sec. 124, to be entitled to the protection of injunction from unlawful interference. The following authorities have held that equity can, and in the exercise of the court's sound discretion, will grant injunctive relief against a continuing course of conduct, display, or other publication in the vicinity or on the public streets disparaging the good name of the complainant's business or the quality of his merchandise, where there is a sufficient showing of irreparable injury to the said business, with no adequate remedy at law available to plaintiff, and where the defendant is motivated by some fraudulent, malicious, or unlawful purpose, to-wit: Carter v. Knapp Motor Co., supra; Menard v. Houle, 298 Mass. 546, 11 N.E.2d 436; Saxon Motor Sales v. Torino et al., 166 Misc. 863, 2 N. Y.S.2d 885. The latter case, however, might have been an attempt by a Bronx Court of Sessions to distinguish or question or attack the opinion holding otherwise, even though remedy at law was not practical, of the highest appellate court of the State of New York in The Marlin Fire Arms Company v. Shields, supra.

Exceptions to the rule stated in 43 C.J.S. Injunctions § 135, may also be seen in Dittgen v. Racine Paper Goods Co. (C.C. Wis.) 164 F. 84; Dehydro, Inc., v. Treto-lite Co., (D.C.Okl.) 53 F.2d 273; In re Quick Charge, Inc., 69 F.Supp. 961, (D.C. Okl.) (although reversed on other grounds in International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America Local No. 886 et al. v. Quick Charge, Inc. 10 Cir., 168 F.2d 513, and Wolf v. Gold, 9 A.D.2d 257, 193 N.Y.S.2d 36.

In Dehydro, Inc. v. Tretolite Co., supra, the court said the gravamen of the action before it was not just libel, but involved threats made by defendant to plaintiff's customers that plaintiff's product infringed letters patent owned or controlled by defendant for which defendant would seek damages if they used plaintiff's product.

Plaintiff in the case before us concedes that had the display of the "Real Lemon" sign been the only act directed against the plaintiff he would have no right in equity to enjoin the defendants, but it is contended that defendants' demand for reimbursement for expense of his attempt to remedy a faulty transmission of the automobile purchased from plaintiff, and a new transmission for it, and that unless such demand be complied with, the sign would be exhibited upon the car, and the subsequent doing so, was conspiracy, intimidation and coercion for which equity may assume jurisdiction to enjoin in order to protest plaintiff's business, good name and good will thereof. But as in Kwass v. Kersey, supra, there is an absence of proof in the record of conspiracy, intimidation or coercion.

The acts alleged to have been done by defendants were exhibiting in the vicinity of plaintiff's place of business a 1961 Pontiac Station Wagon with the aforesaid sign erected thereon and the suspending real lemons from said sign. There was no allegation, nor offer of evidence that the defendants were interfering with the operation of plaintiff's business, or were making any threats toward any customers, present or prospective, of plaintiff. The intimidation, threats and insinuations appear to have been but letters written by defendant, Hans

Schmoldt, to Pontiac Division of General Motors Company, and exhibited to the plaintiff, stating that unless an adjustment be made defendant would let the world know of the ill treatment he had received in respect to the automobile and the failure of the manufacturers or their representative to adjust same.

■ It was the position of plaintiff that although the defendant had the right of free expression and to exercise such right by placing the sign on his car and driving and parking it in public places within the city, that this right was forfeited when he informed plaintiff and Pontiac Division of General Motors that unless an adjustment was made he would let the public know that in his opinion the automobile was defective and that he had been ill treated with respect thereto and the court might then enjoin. This position was sustained by the trial court, but in our view it is not well founded. This would be to say, in effect, that by requesting an adjustment and being refused, the defendant had forfeited his right to express his sentiments concerning the defective automobile. If that position is correct the defendant must speak of the automobile in complimentary manner since the date of the judgment, as to speak derogatively of it might subject him to contempt proceedings. We do not agree with plaintiff's contention.

It is thus apparent that the plaintiff has not sustained the burden of showing facts which bring his suit within the exceptions to the rule that equity will not restrain libel or slander, though the false statement may injure plaintiff's business, profession or trade, in the absence of acts of conspiracy, intimidation or coercion, because the party allegedly wronged has an adequate remedy at law. When a party as the basis of his claim or defense asserts that he is within an exception to a rule of law, the burden is on such party to prove all the facts necessary to bring himself within such exception.

Under the evidence in the case, there being nothing to warrant the conclusion that threats, intimidation or coercion upon plaintiff's customers, or prospective customers, had been made or would in the future probably be made, in a course of conduct in which the exhibiting of the sign defaming plaintiff's business might be an implement, or portion, the plaintiff failed to show facts indicating that his complaint was within the exception provided in the rule that equity will not restrain libel or slander.

The language of the State Constitution is clear and unambiguous. The fundamental idea it conveys is that every person possesses the right to freely speak, write, and publish his sentiments on all subjects, but that he is responsible at the hands of the law for an abuse of such right. The constitutional provision forbids the making of any law abridging or restraining liberty of speech or of the press. Neither the Legislature nor the courts may do so. And if the freedom to speak, write or publish is abused, the same provision imposes upon the abuser of such right both criminal and civil responsibility. However, he would be entitled to a jury trial for the determination of his guilt or innocence or his liability or non-liability. In either, truth would be a defense. For the courts to act as censors is directly violative of the purpose for which the provision was apparently framed, that of abolishment of censorship and providing adequate and complete remedy for one against whom the defamatory publication was made. The plaintiff in this suit should have been left to his remedy at law by action for damages and/or as an added deterrent, a prosecution for the defamation by criminal prosecution. Such remedy is adequate. We do not, however, express any opinion on the merits of a proceeding at law in either respect.

The judgment and decree of the trial court is therefore reversed with directions to render judgment in favor of the defend-

ants denying the injunctive relief sought by plaintiff.

BLACKBIRD, C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.