**FIRST AMERICAN BANK & TRUST COMPANY, PURCELL, OKLAHOMA, Appellee,**

v.

**Gladys SAWYER, Appellant.**

No. 79971.

Court of Appeals of Oklahoma, Division No. 3.

June 22, 1993.

Certiorari Denied Sept. 15, 1993.

Micheal Salem, Norman, for appellant.

Kenneth L. Buettner, Joseph Walters, Oklahoma City, for appellee.

## OPINION

HUNTER, Judge:

Appellant had unfortunate dealings with Appellee Bank (Bank) and one of its former officers. Appellant's mother had devised two lots with houses in Lexington, Oklahoma, to Appellant. The houses were located on the same street. Appellant mortgaged the house at 422 Beech, but held the house at 410 free and clear. Appellant then defaulted on her mortgage, Appellee foreclosed and the 422 house was sold at a Sheriff's sale. A then vice-president at Bank, Swanner, bought the house. By inadvertence, Bank's records showed that the house Swanner bought was the 410 property. Swanner invested about $12,000.00 in repair and renovation in the 410 property. When the mistake was discovered, Appellant and Swanner were unable to come to an agreement about how to solve the dilemma. Swanner then sued Appellant in Cleveland County District Court for unjust enrichment and prevailed. Appellant appealed the judgment but the Court of Appeals, Div. 4, on September 4, 1990, affirmed the trial court. The Oklahoma Supreme Court denied certiorari. Swanner later sold his interest in the judgment to Bank which later bought that property at a Sheriff's sale.

Appellant attempted to sue Swanner and Bank in McClain County because of her loss of the two houses. This suit was dismissed before trial on the ground of res judicata.

In October, 1991, Swanner was charged in the Western District of Oklahoma of making a false statement in a loan application. He pled guilty to the charge and was sentenced in December, 1991. The facts behind the criminal charge do not relate to Appellant or her dealings with Bank.

In April, 1992, Appellant began her peaceful picketing and leafletting on the public sidewalk in front of Bank. Appellant was not accused of trespass, disturbing the peace, harassment of Bank's customers or any individuals or any such conduct. Bank's sole objection had to do with the content of Appellant's flyers, especially the two attached to this opinion. The first one acclaims that Bank, and in small print and parenthetically, "and/or its employees", "HAS BEEN CONVICTED OF Improper Munipulation (sic) of Capital Failure to Disclose Information And Has A LARGE SETTLEMENT NOW PENDING AGAINST IT. Maybe You Should CHECK YOUR MONEY." The second flyer declares that "SQUATTERS RIGHTS Are Legal Again" and essentially explains Appellant's unhappiness with the legal theory of unjust enrichment.

### Procedure

On Friday, May 29, 1992, Appellee applied for and was granted an ex parte temporary restraining order. The temporary injunction hearing was scheduled for the following Monday, June 1. On June 1 Appellant requested and was granted a continuance. The matter was heard June 12, 1992.

The District Court of Cleveland County, after hearing, temporarily enjoined Appellant from distributing the two above-mentioned handbills and specifically enjoined Appellant from making any of the following statements, finding them false and tending to injure bank:

1. That the Bank has been convicted of a crime;

2. That the Bank is involved in a conspiracy to commit fraud;

3. That the Bank conspired with anyone to deprive Sawyer of any property;

4. That there is a large settlement pending against the Bank;

5. That depositors' funds are not safe in the Bank;

6. That the Bank has improperly manipulated capital;

7. That the Bank has improperly refused to disclose information.

The Court further temporarily enjoined Appellant from violating 6 O.S.1991 § 1413, which states:

It shall be unlawful for any person to publish, utter, or circulate any false, malicious, unprivileged statement or representation for the purpose of injuring any banking institution chartered, existing, or doing business within the State of Oklahoma, under and by virtue of the laws of this state, or under and by virtue of the laws of the United States of America.

At this time, the court also dissolved the TRO and denied Appellant's motion to dismiss.

### Issues

■ This interlocutory order of temporary injunction comes on for review as a matter of right pursuant to 12 O.S.1991 § 993 and App. Proc.R. 1.60(c). Appellant's attempt at raising issues concerning the TRO are not well-taken. 12 O.S.1991 § 1384.1(D) provides that if the party who obtained the TRO fails to prosecute the temporary injunction, which matter must be set down at the earliest possible time and which takes precedence over other matters, then the court must dissolve the TRO. Appellant's speculation on what if the temporary injunction were not timely prosecuted, or wrongfully issued, is not well-taken for the reasons that (1) that is not reflective of the facts in this case and (2) there is no authority for appeal of the TRO, (3) even if there were error, not all error is reversible error and (4) any questions were mooted by the temporary injunction action.

■ Appellant also asks us to find 6 O.S. 1991 § 1413 unconstitutional as being vague, overly broad, discriminatory against speech based on content and a chill of free expression. Appellant failed to raise this issue below and has waived it for review. *Mothershed v. Mothershed,* 701 P.2d 405 (Okl. 1985), *Frey v. Independence Fire & Cas. Co.,* 698 P.2d 17 (Okl.1985). We presume the constitutionality of statutes and we will uphold the statute unless it is clearly, palpably and plainly inconsistent with the Constitution. *Kimery v. Public Service Co. of Oklahoma,* 622 P.2d 1066 (Okl.1980).

Appellant proposes five issues, some of which, as shown above, are not properly before us for review. Appellant's fifth proposition, however, that the temporary injunction was erroneously issued based on the law to apply to the evidence presented, is viable.

We disregarded all of Appellant's footnotes, unless they were a simple reference to the record. Appellant violated Supreme Court Rule 18 which states that a brief may not exceed 30 pages, exclusive of tables and indices. All but 3 pages of Appellant's 30 page brief contained single-spaced footnotes. Of those three pages, one had five lines of double-spaced copy and 33 lines of single-spaced quote. Page 20 contained no copy but 36 lines of single-spaced footnote. This is clearly an abuse of the footnote privilege.

### Standard of Review

■ Injunction is an extraordinary remedy and relief by this means should not be lightly granted. *Amoco Production Co. v. Lindley,* 609 P.2d 733 (Okl.1980). We will not disturb the order granting or refusing the injunction unless there is a showing that the court abused its discretion or that the judgment is clearly against the weight of the evidence. *Johnson v. Ward,* 541 P.2d 182 (Okl.1975). We may reverse, vacate or modify injunctions when it appears to us, from the nature of the case and all the facts properly before the court, that a party was not entitled to the injunction. 12 O.S.1991 § 952(b)(2); *Bd. of Regents of the Univ. of Oklahoma v. Nat. Collegiate Ath. Ass'n,* 561 P.2d 499 (Okl.1977). The four criteria the court considers in deciding whether to issue a temporary injunction are: (1) applicant's likelihood of success on the merits; (2) irreparable harm to the party seeking relief should the temporary injunction be denied; (3) relative effect on other interested parties and (4) public policy concerns arising out of the issuance of injunctive relief. *Roye Realty & Developing, Inc. v. Watson,* 791 P.2d 821 (Okl.App.1990).

### Findings on Review

■ We find the temporary injunction was issued in error because the law applied to the evidence will not sustain that order.

First we examine Appellee's likelihood of success on the merits. The trial court found that Appellant had "made false statements which tend to injure" Appellee. 6 O.S. 1991 § 1413 calls for more than just false statements. There is no unlawfulness unless the statements are "false, malicious, unprivileged" and published, uttered or circulated for the *purpose of injuring* a banking institution, (emphases ours). Furthermore, during

the hearing, it was established that Appellee had not presented evidence of malice.[1]

Likelihood of success on the merits is placed in further doubt because had the case been tried criminally or in tort, Appellant would have had a right to a jury trial, different standards of proof would have applied and there would have been time to prepare for trial. In point of fact, the only statutory enforcement mechanism for 6 O.S. 1991 § 1413 is found at 6 O.S. 1991 § 1414, which reads, in pertinent part:

A. Any person responsible for an act or omission expressly declared to be unlawful or a criminal offense by this Code shall be guilty:

(1) of a misdemeanor punishable by imprisonment for a term not exceeding one (1) year or a fine not exceeding Fifty Thousand Dollars ($50,000.00), or both.

(2) if the act or omission was intended to defraud, of a felony punishable by imprisonment not exceeding One Hundred Thousand Dollars ($100,000.00), or both.

Appellee admitted it approached neither the District Attorney nor a U.S. Attorney about prosecuting Appellant.

Having reviewed all the evidence in the record and in light of the court's order which fell short of the statutory language, that is, without a finding that the publications were malicious and unprivileged, as well as false and without a finding of injury, leads us to conclude there was an insufficient showing of "likelihood to prevail on the merits".

We next turn to whether there was irreparable harm to Appellee if the injunction were not granted. We find Appellee would not be irreparably injured if the temporary injunction were denied.

First, as we have indicated, there was an abundance of adequate remedies. Appellee has made a prima facie case for a tort action. Appellee cites Am.Jur. for the proposition that a belief that the litigant will not be able to collect damages is an item the court may consider when deciding whether irreparable injury exists. 42 Am.Jur.2d, *Injunctions*, § 49. Although other jurisdictions have used this claim as one of the criteria to be used in deciding whether there is irreparable injury, there is no Oklahoma case supporting this point. Perhaps in some action the defendant's lack of financial resources might be a factor to consider in deciding whether there is irreparable harm, but we are loathe to call it a rule in Oklahoma. We do not favor an action that allows injunctions against the poor or judgment proof but suits for damages against those the suer believes have sufficient resources to pay any damages. In *Semke v. Okl. Motor Vehicle Com'n*, 465 P.2d 441 (Okl.1970), the Oklahoma Supreme Court stated our rule that an injunction may issue when damages are an inadequate remedy. In that case, Semke was selling new cars without a license from the Oklahoma Motor Vehicle Commission required by 47 O.S. 1961 § 564. The court held in that case that the injunction was proper because merely violating the statute and continuing to violate the statute amounted to irreparable harm to the residents of the state. Semke's position was that injunctive relief could not be had because there were no provable damages. In this case, the "damage" was to the integrity of the legal system. A suit for monetary damages is inadequate under these facts.

As we have already stated, 6 O.S. 1991 § 1413 is a penal statute. The rule is that equity will not enjoin a penal statute. There are exceptions to the rule. In *Stovall v. Continental Federal Savings and Loan Assoc.*, 635 P.2d 1336 (Okl.1981), a permanent injunction issued against Stovall because he was interfering with the bank's business, verbally harassing the officers and employees and creating fear in at least the loan officer by going by her house in the early morning hours. If an injunction is otherwise warranted, and if the action to be enjoined affects rights, property and general welfare, then equity may except to its gener-

---

1. Mr. Salem: Okay. Thank you. Court will note that the bank's consideration with regard to malicious statements, there is no evidence in the record to that.

The Court: Agreed.

al rule. *Stovall*, at 1338. Consistent with the narrow scope created to except to the general rule that equity will not enjoin a penal statute is the holding found in *Taylor v. State*, 291 P.2d 1033 (Okl.1955). In this case, the District Attorney sought to enjoin Taylor from using the title "Dr." and from holding himself out as qualified to engage in the diagnosis or treatment of human ailments. Taylor was not licensed by the medical board but stated he was a doctor of "Naturopathy". The Healing Arts Act made it unlawful for a person to practice or offer to practice any branch of the healing arts without a legal license or certificate authorized by the state. It is axiomatic that the state has a profound interest in the health, safety and welfare of its residents and for that reason, regulates those, such as physicians, who affect that welfare.

■ Another exception to the rule that equity will not enjoin a penal statute or libel or slander is if the applicant for injunctive relief shows the involvement of conspiracy, intimidation or coercion. *Schmoldt v. Oakley*, 390 P.2d 882 (Okl.1964). Schmoldt bought a car from Oakley dealership. At about 30,000 miles, the transmission failed. Schmoldt incurred the expense of repairing the transmission and prepared a letter which he showed to Oakley, addressed to General Motors. The letter contained language to the effect that unless his claim for repairs was honored he would make it known in the community how he had been ill-treated. His claim was rejected. Schmoldt then made a sign $7 \times 2\frac{1}{2}$ feet which he displayed on his GM car and which read: "LIKE TO HAVE A REAL LEMON—BUY THIS PONTIAC BY GENERAL MOTORS Ed 3–4607 FOR DETAILS. He parked with his sign in the street near the Oakley dealership. The court found that even the letter threatening to tell the whole community about the ill-treatment was insufficient to carry the burden of proof required to bring Oakley's case within the exceptions to the rule that equity will not restrain libel or slander because there is an adequate remedy at law, even when the action may injure a business, trade or profession. *Schmoldt*, at 886. In the instant case, Appellee claims it showed coercion when Appellant testified, in answer to Appellee's question:

Q What do you hope to accomplish by standing in front of the bank with signs and distributing the leaflets?

A Well, I had thought that perhaps the bank would see clear that I would get my house back, but apparently that's not going to happen.

■ In light of *Schmoldt*, we cannot find Appellant's "coercion" sufficient to lift the case out of the rule that equity will not enjoin libel or slander. In fact, Appellee's first question to Appellant on its direct examination was "Mrs. Sawyer, why have you been standing in front of the bank holding signs and distributing leaflets? Her answer was that she got an erroneous or unfair judgment in the unjust enrichment case against her.

As we stated in our first conclusion, we do not find sufficient evidence that Appellant violated 6 O.S. 1991 § 1413. Nor do we find that Appellee presented sufficient evidence of irreparable harm or injury.

■ Lastly, we look at any public policy concerns which may have arisen from the granting of this temporary injunction. The constitutional guarantee of free speech, as a rule, prohibits the courts from putting prior restraints on publications. *Schmoldt*, at 884. Oklahoma Constitution, Art. 2, § 22 states:

Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions for libel, the truth of the matter alleged to be libelous may be given in evidence to the jury, and if it shall appear true, and was written or published with good motives and for justifiable ends, the party shall be acquitted.

■ We find that the people's guarantee of free speech is a public policy concern by virtue of the Constitution of the State of Oklahoma. If a person is accused of abusing this right, the accused should, in the normal course of events, be afforded all the legal procedural rights which attach to either criminal or civil actions. The injunction ave-

nue of redress is misused if there is no real emergency, no irreparable harm or there is truly an adequate remedy at law. An injunction is a discretionary action. The freedom of speech is a constitutional guarantee. Although prior restraint may be placed on speech, *Schmoldt*, at 884, citing 43 C.J.S. Injunctions § 135, states the rule we follow in this kind of case:

> ... the operation of the rule that equity will not restrain a mere libel or slander is not affected by the fact that the false statement may injure plaintiff in his business, profession, or trade, or as to his credit or property, in the absence of acts of conspiracy, intimidation or coercion, or where no breach of trust or of contract appears, because the party wronged has an adequate remedy at law by action for damages or criminal prosecution.

Appellant and Appellee being the only parties to this action, the last factor, that is, relative affect on other interested parties, is not relevant to our inquiry.

We recognize the trial court's sensitivity to the guarantee of free speech and its attempt to narrowly draw the injunction so as to infringe on the guarantee as little as possible.

In this case, however, the record contains inadequate evidence to support an order restraining any of the speech.

In summary, the temporary injunction was issued in error because (1) findings of "false statements, tending to injure" are insufficient to meet the elements of the statute which require false, malicious unprivileged statements which were uttered for the purpose of injuring the bank; (2) even had the statutory elements been met, there was insufficient showing of irreparable harm, especially because there exists at least two adequate remedies at law; and (3) the guarantee of speech being of constitutional dimension, in a commercial situation, the customer's speech should not be restrained a priori without a showing not only of falsity and harm, but of conspiracy, coercion or intimidation. We therefore reverse the order of temporary injunction and remand the matter to the trial court with directions to dissolve the temporary injunction and otherwise proceed in a manner consistent with this opinion.

REVERSED AND REMANDED.

HANSEN, C.J., and BAILEY, P.J., concur.

~~IIDII D~~

# SQUATTERS RIGHTS
# Are Legal Again

## The Second Oklahoma Land Rush Is ON

HEREBY CERTIFY THAT THE FOREGOING IS A
AND COMPECT AND COMPLETE COPY OF
STRUMENT HEREWITH ELUCIDATE IT
RS ON RECORD WITH COURT CLERK'S
E OF CLEVELAND COUNTY, OKLAHOMA.

ess my hand and Seal this __29__ day
_____ 19_92_

Charlotte Reynolds
Court Clerk

Deputy

Cleveland County Court Case #C-88-926 (1989)
has set the precedent which does allow anyone to
go onto any property make changes and
then sue the owner for **Unjust Enrichment**

We do not condone this action but it does
appear to now be legal!

David Swanner while Vice President of The First American Bank and Trust Company of Purcell,
went to a house and did some renovation. David Swanner, while still The Bank Vice President,
sued the owner of the house for Unjust Enrichment. He won the case (he did not even have to
prove how much he spent), and the First American Bank of Purcell is now taking the house.
THIS IS LAND SQUATTING. David Swanner EVEN used the Bank Lawyer for his court suit.

IF THE FIRST AMERICAN BANK OF PURCELL AND DAVID SWANNER CAN DO
LAND SQUATTING THEN ANYONE CAN!!!

The First American Bank and Trust Company of Purcell
and David Swanner, Vice President of above,
DID this and they got away with it -- SO ANYONE CAN!!!
MAKE SURE YOU GET INTEREST ON YOUR IMPROVEMENTS.

ALLEGED

# This Bank,

(and/or its employees)

# THE FIRST AMERICAN BANK AND TRUST COMPANY OF PURCELL HAS BEEN CONVICTED OF

## Improper Munipulation of Capital Failure to Disclose Information And Has A

# LARGE SETTLEMENT NOW PENDING AGAINST IT.

## Maybe you should CHECK YOUR MONEY!

Okla Case # C-89115

ALLEGED

EXHIBIT A-2 PAGE 4 OF 5