**DORCHESTER HUGOTON, LTD.,**
a Texas Limited Partnership,
Appellee,

v.

**DORCHESTER MASTER LIMITED PARTNERSHIP, a Texas Limited Partnership; Parker & Parsley Gas Processing Co., Parker & Parsley Development Co. and Midland Gas Processing Co., Appellants.**

**No. 83565.**

Court of Appeals of Oklahoma,
Division No. 3.

May 7, 1996.

Rehearing Denied June 10, 1996.

Certiorari Dismissed Sept. 30, 1996.

Philip D. Hart, L. Vance Brown, Oklahoma City, for Appellants.

David K. Petty, Guymon, Mark D. Christiansen, Oklahoma City, for Appellee.

## *OPINION*

HANSEN, Presiding Judge:

Appellants, Dorchester Master Limited Partnership ("DMLP"), Parker & Parsley Gas Processing Co. and Parker & Parsley Development Co. (collectively "P & P"), and Midland Gas Processing Co. ("Midland"), seek review of the trial court's order which granted a permanent injunction to Appellee Dorchester Hugoton, Ltd. ("Dorchester"). Dorchester sought a permanent injunction against DMLP, Midland and Parker and Parsley Gas Processing Company (collectively "Appellants"), to enjoin those entities from interfering with Dorchester's assumption of possession, operation and control of a gas

gathering pipeline system, which is referred to as the Hooker Gas Plant Gas Gathering System.[1]

Dorchester originally filed this action, Case No. C–89–34 in the District Court of Texas County, in 1989, against DMLP and Damson Oil Corporation, DMLP's general partner (collectively "Defendants"). The parties refer to this action as the "34 Case". Dorchester sought judgment for monetary damages based upon the fraudulent conduct of Defendants regarding the sale to Dorchester of certain oil and gas leasehold properties conveyed by the Defendants to Dorchester in a 1986 Assignment and Bill of Sale. Dorchester also sought to quiet title to these properties. On September 24, 1990, the trial court entered judgment in accordance with a jury verdict in favor of Dorchester for $4,715,326.00 and then quieted title to the

real and personal property acquired from Defendants in the 1986 Assignment. Defendants appealed this judgment to the Court of Appeals in Case No. 76,515. The Court decided the appeal on November 2, 1993, affirming the quiet title portion of the judgment but reversing the judgment for actual and punitive damages for fraud.[2] The cause was remanded to the trial court for a new trial on the damage suit issues.[3]

On April 20, 1994, Dorchester sought the permanent injunction here appealed. The same day, April 20, 1994, the trial court held a combined hearing to consider both the permanent injunction request of Dorchester in the 34 case and a request for a temporary injunction from Parker & Parsley Gas Processing Co. et al. in C–93–6 (hereafter "the 6 Case").[4] It granted the permanent injunction to Dorchester on April 26, 1994. Appel-

---

1. In its Motion for Entry of Injunction in Enforcement of the Court's Prior Decree, Dorchester asserts Midland Gas Processing Co. (Midland) is the successor to certain rights claimed by the Defendants in C–89–34 and that DMLP and Midland claim to be the current owners of and successors to the gathering system. It also asserts Parker and Parsley Gas Processing Co. is an "affiliated company" of Defendants and the agent of DMLP and Midland in maintaining and operating the gas pipeline gathering system. The trial court's injunction order enjoins DMLP and Midland and their affiliated companies and Parker & Parsley Gas Processing Co. from interfering with Dorchester's rights to the gathering system. Neither party disputes Parker and Parsley Gas Processing Company, DMLP, Parker & Parsley Development Company and Midland Gas Processing Company are the successors in interest of DMLP and Damson. For the purposes of this appeal, these four parties will be treated as Appellants.

2. The judgment provides:
"[P]laintiff's title to the real and personal property acquired from defendants on June 20, 1986, by Assignment and Bill of Sale recorded in Book 752 at page 288 in the records of the County Clerk of Texas County, Oklahoma is quieted against the defendants, Dorchester Master Limited Partnership and Damson Oil Corporation as prayed in plaintiff's petition, and said defendants are barred from claiming any right, title or interest in any of said real or personal property described in said Assignment and Bill of Sale except only as to the production payment described on page 2 and in Exhibit B to said Assignment and Bill of said (sic), and the right to participate in 25% of 20% in new wells drilled as described on page 2 and in Exhibit C to said Assignment and bill of Sale."

3. We are unaware of any further proceedings on this issue.

4. Appellants appeal the denial of their requested temporary injunction in Companion Appeal No. 83,475. Dorchester filed its Petition in C–93–6 on January 20, 1993, against Parker & Parsley Gas Processing Co., DMLP, Parker & Parsley Development Company and Midland Gas Processing Co. In the First Amended Petition, Dorchester alleged these defendants violated the parties' gas processing agreement and sought damages for underpayment. Dorchester also sought a declaratory judgment regarding certain rights under the gas processing agreement. Dorchester alleged the defendants slandered its title to the real and personal property conveyed in the 1986 Assignment which was the subject of the 34 quiet title, *including the gas gathering system, and sought to quiet title thereto.* Dorchester also pleaded conversion and tortious interference with contract. Defendants counterclaimed for a declaratory judgment that the 1986 Assignment did not transfer the gathering system to Dorchester and alternatively, for reformation of the Assignment. On December 22, 1993, the trial court entered an order granting partial summary judgment to Dorchester, concluding the gas gathering system was conveyed to Dorchester by the 1986 Assignment. Defendants have filed a cross-motion for partial summary judgment in C–93–6 and argue the 1986 Assignment should be reformed because the parties did not agree to the sale of or intend to transfer ownership of the Hooker Gas Plant gas gathering system to Dorchester by the 1986 Assignment. On the record before us, this motion is still pending.

lants' subsequent motion to this Court to vacate the April 26, 1994, permanent injunction was severed from Appeal No. 76,515, assigned a number (# 83,565) and made a companion to Appeal No. 83,475, which is Appellants' appeal of the temporary injunction in the 6 Case. Although Dorchester's Petition for Writ of Certiorari in No. 76,515 was initially granted, same was withdrawn as improvidently granted on June 21, 1995, and mandate issued.

In support of its quest for permanent injunctive relief, Dorchester contended ownership of the gas gathering system had been adjudicated by the 34 judgment and that injunctive relief was appropriate to enforce the prior judgment. The trial court agreed. In granting the permanent injunction, the trial court relied on the doctrine of res judicata per the judgment in the 34 case and upon its own order which granted partial summary judgment on December 22, 1993, in the 6 Case. On appeal, Appellants contend the trial court erred in concluding that either the 34 Case judgment or the 6 Case partial summary judgment is res judicata as to ownership of the *gathering system* and that the injunction based thereon must be reversed. We agree.

■ This Court will not disturb an order granting or refusing an injunction unless there is a showing that the court abused its discretion or that the judgment is clearly against the weight of the evidence. *First American Bank & Trust Co., Purcell, Oklahoma v. Sawyer*, 865 P.2d 347 (Okla.App. 1993). This Court may reverse, vacate or modify a judgment of the district court where our review of the nature of the case and the facts properly before the trial court reveals that the injunction should not have been granted. *State ex rel. Schulte v. Hallco Environmental, Inc.*, 886 P.2d 994 (Okla. 1994).

■ Appellants maintain the issue of ownership of the gas gathering system is not barred under the doctrine of res judicata because ownership of the gathering system was never an issue in the 34 Case in that Dorchester never claimed to own the gathering system in that action. Appellants assert P & P's predecessor in interest, DMLP, did

not have a full and fair opportunity to litigate that issue. On the other hand, Dorchester maintains the issue of ownership of the gathering system was clearly in issue and decided by the 34 Case judgment.

■ Once a ruling has become final, either for want of an appeal or in consequence of an appellate court's decision, any controversy over the meaning and effect of that decision must be resolved by resort solely to the face of the judgment roll. *Fent v. Oklahoma Natural Gas Company, a Division of Oneok Inc.*, 898 P.2d 126, 132 (Okla.1994). The judgment roll consists of the petition, process, return, pleadings subsequent thereto, reports, verdicts, orders, judgments and all material acts and proceedings of the court. *Mills v. Mills*, 841 P.2d 624 (Okla. App.1992); 12 O.S.1991, § 32.1. A judgment's meaning is to be divined from the terms expressed in its text, which is to be construed with the other parts of the judgment roll. *Stork v. Stork*, 898 P.2d 732 (Okla.1995).

■ Post-appeal construction of the meaning and effect of the 34 Case judgment, including a determination of what was or could have been adjudged thereby, must be garnered solely from the face of the district court's judgment roll viewed together with the appellate pronouncement in the case. *Fent*, at 132. The 34 Case judgment adopted the verdict of the jury and awarded Dorchester $4,715,326.00 against DMLP and Damson jointly and severally. The judgment further provided:

> [P]laintiff's title to the real and personal property acquired from defendants on June 20, 1986, by Assignment and Bill of Sale recorded in Book 752 at page 288 in the records of the County Clerk of Texas County, Oklahoma is quieted against the defendants, Dorchester Master Limited Partnership and Damson Oil Corporation as prayed in plaintiff's petition, and said defendants are barred from claiming any right, title or interest in any of said real or personal property described in said Assignment and Bill of Sale except only as to the production payment described on page 2 and in Exhibit B to said Assignment and

Bill of said (sic), and the right to participate in 25% of 20% in new wells drilled as described on page 2 and in Exhibit C to said Assignment and bill of Sale.

In its Petition in Case 34, Dorchester alleged it owned an undivided 80% working interest in certain oil and gas leaseholds in Texas County, Oklahoma and that DMLP and Damson owned the remaining leasehold interest. Dorchester alleged it had a preferential right, under an operating agreement, to buy the leasehold interests from any party owning an interest in the properties on the same basis as offered by any prospective purchaser. Dorchester alleged it received notice that DMLP and Damson had received a firm offer from Kaiser–Francis Oil Co. to purchase all of its interest in the properties and wells for $2.1 million dollars cash and other consideration. Dorchester exercised its preferential right to purchase Defendants' interest in the properties and paid defendants $2.1 million dollars. In consideration, Dorchester alleged, the Defendants assigned to Dorchester "all its interest in the properties subject of the offer to plaintiff" in the 1986 Assignment and Bill of Sale. Dorchester attached a copy of the Assignment as Exhibit E to its petition. Dorchester further alleged:

9. Pursuant to the terms of Exhibit E attached [the Assignment], plaintiff became the owner of 100 percent of the subject oil and gas leaseholds and all easements, permits, power lines and other rights and appurtenances relating to said oil and gas leaseholds and gas units and all tangible personal property, fixtures, improvements, easements, permits, licenses, servitudes and other appurtenances including but not by way of limitation, all wells, injection wells, salt water disposal facilities, well heads, casing tubing, pumps, motors, gauges, valves, heaters, treaters, flow lines, gas lines, water lines, vessels, tanks, boilers, separators, buildings, fixtures, platforms, machinery, tools and other equipment, pipelines, power lines, telephone and telegraph lines, transportation and communication facilities, and other appurtenances situated upon the said Exhibit A (to the Assignment) properties; together with other property and property rights described in the Assignment.

Dorchester alleged the true amount of cash consideration agreed upon between defendants and Kaiser–Francis for the properties was $1,325,674.00 and that defendants intentionally and willfully misrepresented to Dorchester, the amount of the Kaiser–Francis offer. Dorchester asked for compensatory and punitive damages and that "its title be quieted in and to all of the properties described in the conveyance from the defendant to plaintiff attached as Exhibit E".

Dorchester claims that the above-quoted language in its Petition clearly shows it claimed ownership of the 120–mile low pressure gas pipeline gathering system which Appellants refer to as the Hooker Gas Plant Gas Gathering System.

In their amended answer, Defendants admitted owning the 20% interest in the leaseholds and alleged they entered into an agreement to sell to Kaiser–Francis a large number of properties, including the properties involved in this action (the "Guymon Hugoton properties"), and also including other properties. Defendants admitted Dorchester owned a preferential right to purchase only a portion of the properties involved (the Guymon Hugoton properties) in the purchase and sale agreement between Defendants and Kaiser–Francis. Defendants admitted assigning the Guymon Hugoton properties to Dorchester. Defendants denied the remainder of paragraphs 5, 6, 7, 8 and 9 of Dorchester's Petition "which is in addition to, or inconsistent with" its allegations.

The Assignment and Bill of Sale, attached to Dorchester's Petition and referred to in the judgment, recites that DMLP owned a 20% undivided interest in the oil and gas leasehold estate described in Exhibit A to the Assignment and owned a 20% undivided interest in the wells, equipment and fixtures *located on and used in connection with the operation of the wells described in Exhibit A.* It recites DMLP desires to assign to Dorchester said undivided interests in the oil and gas leaseholds described in Exhibit A and the undivided interests in personal property. The Assignment provides:

NOW, THEREFORE, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, said Grantor does hereby grant, bargain, sell, convey, assign, transfer, set over, and deliver to the said Grantee, its successors and assigns, those certain undivided interests in oil and gas leaseholds (being an undivided 20% interest as shown in said Exhibit A) situated in Texas County, Oklahoma, more particularly identified and described in Exhibit A attached hereto and made a part hereof by reference, *together with a 20% interest in the personal property situated on and used in connection with the operation of the gas wells described in said Exhibit A.*

To the extent that this instrument assigns and transfers undivided interests in personal property from Grantor to Grantee it shall be effective as a bill of sale.

*The property rights assigned and transferred hereby cover and include all Grantor's interests of every kind in the properties described in Exhibit A in which Grantor's share of the working interests and share of net revenue are specified in Part II of said Exhibit A attached, and also include the following:*

\*     \*     \*     \*     \*     \*

3. All Grantor's rights in easements, permits, power lines, and other rights and appurtenances relating to said oil and gas leaseholds and gas units;

4. *All Grantor's rights in tangible personal property, fixtures, improvements, easements, permits, licenses, servitudes and other appurtenances including but not by way of limitation, all wells, injection wells, salt water disposal facilities, well heads, casing, tubing, pumps, motors, gauges, valves, heaters, treaters, flow lines, gas lines, water lines, vessels, tanks, boilers, separators, buildings, fixtures, platforms, machinery, tools and other equipment, pipelines, power lines, telephone and telegraph lines, transportation and communication facilities,*

*and other appurtenances situated upon the said Exhibit A properties;*

\*     \*     \*     \*     \*     \*

(Emphasis added.) Paragraphs 3 and 4 of the 1986 Assignment are substantially identical to the above-quoted paragraph 9 of Dorchester's Petition.

In the pre-trial order, "Quieting Plaintiff's Title" is listed as a ground of recovery for Dorchester and under the heading "What legal issues are to be resolved" is listed "Quiet title". There are no jury instructions on the issue of the extent of the property conveyed by the 1986 Assignment or regarding Dorchester's request for quiet title.[5] After the judgment was rendered, Defendants filed a motion for order nunc pro tunc or alternatively, to vacate the quiet title decree. The basis of the motion was that the judgment quieting Dorchester's title against Defendants was rendered without a trial being held on that claim and without evidentiary support. The trial court denied the motion. This is the relevant extent of the 34 Case judgment roll.

The opinion in Appeal No. 76,515 stated Dorchester, Damson, and DMLP owned common Guymon–Hugoton interests in producing oil and gas wells in Texas County, Oklahoma. They had a contract whereby any party desiring to sell its interest to an outside party must notify the others of the proposed sale and price and those owners had the preferential right to purchase the interest. In 1986, a third party, Kaiser–Francis Oil Co., offered to buy certain interests from DMLP and Damson, including the Guymon–Hugoton interests. In its judgment, the Court stated the amount of the Kaiser–Francis offer was the subject of the action. Dorchester alleged it had been overcharged as a result of a misrepresentation by DMLP and Damson. The Court of Appeals opinion in Case No. 76,515 holds the trial court's judgment quieted Dorchester's title to "the real and personal property acquired by it from Appellants on June 20, 1986, by Assignment and Bill of Sale recorded in Book 752 at page 288 in the office of the County Clerk of Texas County, Oklahoma." The

5. Instruction No. 2 provides in part: "The parties admit that they jointly owned interest in certain Guymon–Hugoton oil and gas wells located in Texas County, Oklahoma."

opinion notes DMLP and Damson failed to brief the quiet title issue on appeal and that therefore the Court would not consider any issue involving same on appeal. The Court then affirmed the trial court's judgment quieting title to the "real and personal property".

The injunction transcript shows the entire Hooker gas gathering system includes a high pressure gas gathering component and a low pressure gathering component. Only the low pressure gas gathering system and "associated personal property" is the subject of the permanent injunction.[6] At the time Dorchester sought the permanent injunction, Parker & Parsley Gas Processing operated, maintained and repaired the high and low pressure systems which are connected to what is known as the Hooker Gas Plant. One general partner of Dorchester testified there is a gas processing agreement in place between Dorchester and the Parker & Parsley group. The president of Parker & Parsley testified the company owns the Hooker Gas Plant and owns the right to process the gas that is produced from the wells connected to the gathering lines. In March, 1994, Dorchester attempted to exercise control over the gathering system by putting in lines and taps to the system for delivery to a new gas purchaser. According to Appellants' witnesses, the effect of these taps would mean the gas from Dorchester's wells would bypass the Hooker Gas Plant and the Hooker Gas Plant does not have the ability to operate effectively without Dorchester's gas.

There are approximately 200 wells connected to both the high and low pressure gathering systems, including wells operated by third parties. Approximately 80% of the gas processed at the Hooker plant comes from Dorchester-operated wells. Under the

1986 Assignment, 111 gas wells (one per section or 640 acres) were assigned to Dorchester. All of these wells are connected to the low pressure gathering system. The low pressure gas gathering system in issue covers approximately 120 sections of land. Thus, there are nine sections of land that the low pressure gas gathering system crosses which do not contain a Dorchester Hugoton well described in the 1986 Assignment. Part of the gathering system includes solar compressors that are located on land also not described in Exhibit A to the 1986 Assignment. The compressors were placed on a tract of land which was leased to Dorchester Gas Producing Company (P & P's predecessor) from Natural Gas Pipeline Company.

■■■ Under the doctrine of res judicata, a final judgment of a court of competent jurisdiction upon a matter properly before it concludes the matter as to the parties to the litigation and their privies and constitutes a bar to a new action upon the same cause of action, either before the same or any other tribunal. *Dearing v. State ex rel. Commissioners of the Land Office*, 808 P.2d 661, 664 (Okla.1991). The doctrine of res judicata, or claim preclusion, operates to bar relitigation by the parties or their privies of issues which were or *could have been litigated* in an action which resulted in a final judgment on the merits. *Erwin v. Frazier*, 786 P.2d 61, 64 (Okla.1989); *Wilson v. Kane*, 852 P.2d 717, 722 (Okla.1993).[7]

■■■ The phrase "could have been litigated" is not all inclusive. With regard to the bar of issues which could have been litigated, the Supreme Court has said:

> The general expression in reported cases, that the former judgment is conclusive of every matter which the parties might have

6. Dorchester claims it owns both the low and high pressure gathering lines but only sought to enjoin Appellants from its operation of the low pressure system.

7. Under collateral estoppel (issue preclusion), once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Veiser v. Armstrong*, 688 P.2d 796, nt. 9 (Okla.1984). When collateral estoppel (issue preclusion) is invoked, the point upon which the

plea of estoppel is based must be in issue in the present action and must have been in issue and decided in the former action. *Boy Scouts of America, Inc. v. Thompson*, 380 P.2d 705 (Okla. 1963); *Flick v. Crouch*, 434 P.2d 256 (Okla. 1967). The facts conclusively determined by a judgment include not only the ultimate facts but also the material facts necessary in arriving at the conclusion, if such facts are properly in issue. *Spencer v. Woods*, 208 Okla. 204, 254 P.2d 974 (1953).

litigated in the case, is misleading. What is meant by this expression is that a judgment is conclusive upon the issues *as there disclosed by the pleadings, instructions of the court, the verdict or findings and the scope and meaning of the judgment is often determined by the pleadings or findings.* So far as those issues are concerned, they are not subject to review in another litigation.

*Wilson v. Vance,* 205 Okla. 641, 240 P.2d 108 (Okla.1952) (Emphasis added). Because res judicata requires a "final judgment on the merits", the trial court's stated reliance on its own order granting partial summary judgment in C–93–6 *which is not final,* cannot be the basis of its determination that the issue of the ownership of the gathering system is res judicata in the 34 Case. For res judicata purposes, only terminal judicial rulings are given preclusive effect. *Panama Processes, S.A. v. Cities Service Company,* 796 P.2d 276 (Okla.1990).

Appellants maintain the 34 Case judgment is not res judicata because Dorchester never placed in issue the ownership of the gathering system or otherwise claimed to be the owner of the gathering system by virtue of the 1986 Assignment. Dorchester asserts the language in paragraph 9 of its Petition clearly put Appellants on notice that it claimed the gathering system via the 1986 Assignment. We disagree. There is nothing in the judgment roll which discloses a claim by Dorchester of ownership over the low pressure gas gathering system.[8] Paragraph 9 of Dorchester's Petition is simply a recitation of part of the 1986 Assignment which sets forth part of the interests conveyed by the Assignment. Although the Petition shows Dorchester claimed an interest in certain personal property interests which relate to the oil and gas interests conveyed under the Assignment, there is no allegation that the items included in paragraph 9 comprise the Hooker gas gathering system here in issue.[9]

8. Dorchester claims on appeal that Appellants knew of its claim of ownership over the gathering system in September, 1988, by virtue of certain statements made in summary judgment pleadings in Case No. C–87–129 in the District Court of Texas County, Oklahoma. Dorchester included a copy of this order in its appellate brief and maintains same was not appealed. Dorchester also included a copy of those summary judgment pleadings in an appendix. These pleadings and the order in C–87–129 are not a part of the judgment roll in C–89–34 and we may not consider them in determining what issues were or could have been decided by the 34 Case judgment. Nor were these items tendered for the trial court's consideration at the injunction hearing. Although the December 22, 1993 order granting partial summary judgment in the 6 Case "recognizes the order entered by Judge Frank Ogden on October 31, 1988, in Cause No. C–87–129, in the First Judicial District, Texas County, Oklahoma", as noted earlier, the partial summary judgment order is not final and cannot be the basis for res judicata in this action.

9. Appellants state that application of res judicata is inappropriate because it was unaware of Dorchester's claim of ownership of the gathering system and that because *they were unaware of the claim,* they were prevented from "fully and fairly litigating it." In this connection, Appellants argue the rationale behind certain decisions regarding compulsory counterclaims, that a party is not required to assert an unmatured claim or need not assert a claim which the party is not aware of, should apply when res judicata application is sought. We note Dorchester did not

base its res judicata argument on Appellants' failure to raise a compulsory counterclaim. (The effect of a defendant's failure to assert a counterclaim made compulsory by § 2013(A) is to preclude its assertion in a later action against the former plaintiff. *Turner v. Federal Deposit Insurance Corporation,* 805 P.2d 130 (Okla.App.1991).)

Both res judicata and collateral estoppel require that the party or parties against whom the earlier decision is asserted, had a full and fair opportunity to litigate the claim or issue. *Kremer v. Chemical Construction Corporation,* 456 U.S. 461, 480–81, nt. 22, 102 S.Ct. 1883, 1897, nt. 22, 72 L.Ed.2d 262 (1982); *Sil–Flo, Incorporated v. SFHC, Incorporated,* 917 F.2d 1507 (10th Cir. 1990). See also *Temeron, Inc. v. Ferraro Energy Corporation,* 861 P.2d 319 (Okla.App.1993). Often the court's determination regarding whether a party had a full and fair opportunity to litigate will include inquiry into whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to fully litigate the issue, and whether the effective litigation was limited by the nature or relationship of the parties. *Sil–Flo, Incorporated,* 917 F.2d at 1521. Other than not being aware of Dorchester's claim to own the gathering system, Appellants have not argued they were otherwise deprived of a full and fair opportunity to litigate in this case. Because we have determined res judicata per the Case 34 judgment does not apply to bar litigation of ownership of the gathering system, we need not further address Appellants' contentions regarding its lack of "full and fair opportunity to litigate".

The purpose of a quiet title action is to determine who is the real owner of the property and to put to rest all adverse claims. *Schultz v. Evans,* 204 Okla. 209, 228 P.2d 626 (Okla.1951). In a quiet title action, all matters affecting the title of the parties thereto may be litigated and determined and the judgment rendered therein is final and conclusive as against the parties thereto and their privies. *Id.,* at 628. "The inherent power of a court of equity to grant relief by removal of a cloud from a litigant's title has for its purpose adjudication of the claim that some interest in property which is adverse to the complainant's asserted interest, is valid." *Bates v. Old Mac Coal Co.,* 271 P.2d 315, 318 (Okla.1954).

The judgment quieted in Dorchester, title to the properties conveyed in the 1986 Assignment. There are no specific findings in the judgment regarding the nature of the interests conveyed. The judgment does not provide that the 120–mile "gathering system", which apparently crosses property that does not contain a Dorchester well, was conveyed to Dorchester by virtue of the above-quoted language of the Assignment. This issue was not litigated and the judgment roll does not reflect that it could have been litigated. The pleadings and other items did not disclose Dorchester's claim of ownership over the gathering system. The evidence at the injunction hearing shows Dorchester did not assert that it was the owner of the low pressure gathering system until March, 1994.

There is no final judgment on the merits which conclusively determines whether the gas pipeline gathering system here in issue was conveyed to Dorchester via the 1986 Assignment. The trial court's permanent injunction against DMLP, Midland, and Parker & Parsley provides that these parties are "enjoined from interfering with Plaintiff's activities related to the placement of meters or valves on, the making of connections to, and the assumption of possession, operation and control of, the low pressure gas pipeline gathering system (but not the high pressure system) and associated personal property, *conveyed to Plaintiff under the Assignment of Undivided Interests in Oil and Gas Leaseholds and Bill of Sale of Personal Property dated June 20, 1986, recorded in Book 752 at Page 288.*" Because we are holding that res judicata is an improper basis of the injunction, and because the general rule is that the remedy of a party out of possession who asserts ownership over personal property is an action at law and that an equitable injunction proceeding is not a proper substitute for the legal action, the trial court's judgment must be reversed.[10] On the record before us, Dorchester was not entitled to a permanent injunction in this action and the trial court's order granting the injunction is hereby, REVERSED.

ADAMS, V.C.J., and CARL B. JONES, J., concur.

---

**10.** The general rule is that when the title to personal property of ordinary character is in dispute, and the title asserted by the respective parties is a strictly legal title, the remedy of the party out of possession is at law by an action of replevin and he cannot maintain a suit of equity to establish ownership. *Brooks v. Tyner,* 38 Okla. 271, 132 P. 683 (1913). See also *Mid–Continent Pipe Line Company v. Emerson,* 396 P.2d 734 (Okla.1964) (In the absence of an emergency, an injunction suit cannot legitimately be used to determine title to property or property rights, or to recover the possession of real or personal property, the legal remedy being adequate.)