**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 3 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TOMMY MOORE,

      Plaintiff-Appellant,

v.

TEXACO, INC.,

      Defendant-Appellee.

No. 00-6043

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-98-1619-T)**

---

Submitted on the briefs:

Micheal L. Darrah, Bill M. Roberts, Hilary S. Allen, Oklahoma City, Oklahoma,
for Plaintiff-Appellant.

M. Benjamin Singletary, Ronald N. Ricketts, Theodore Q. Eliot, of Gable &
Gotwals, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **BRORBY** , **KELLY** , and **LUCERO** , Circuit Judges.

---

**KELLY** , Circuit Judge.

---

Plaintiff-appellant Tommy Moore appeals from the district court's order granting summary judgment to defendant-appellee Texaco, Inc. Moore sought to hold Texaco liable for damage caused by oil spills from oil storage tanks previously located on Moore's property. Moore asserted claims of negligence, trespass, public and private nuisance and abatement, and unjust enrichment. The district court rejected each of these theories of liability. We affirm. [1]

Texaco [2] purchased the land now owned by Moore (the "property") on April 1, 1915. Along with the land, Texaco purchased twenty-two 55,000 barrel steel tanks previously used for oil storage on the property. Texaco operated the property as a "tank farm" until 1954. At that time, it sold the tanks to the Natasco Company, which removed them.

On November 3, 1955, Texaco sold the property to Moore's father, L.A. Moore. In the deed to L.A. Moore, Texaco retained the mineral rights to the property. Moore, the plaintiff in this action, acquired the property when his father L.A. Moore died in 1976.

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2]     Texaco's predecessor-in-interest, the Texas Company, purchased the property. For purposes of this order and judgment, we refer to both Texaco and the Texas Company as "Texaco."

Prior to the 1955 purchase, L.A. Moore resided on land adjacent to the property. Both Moore and his father L.A. Moore knew that a tank farm had previously been located on the property. There is no evidence of record that Texaco conducted any oil field operations on the property after the sale to L.A. Moore.

Moore alleges that the surface soil, subsurface soil, surface water and groundwater on the property is contaminated by crude oil, natural gas and other crude oil by-products. He contends that he was unaware of this contamination until 1997. He also alleges that Texaco built large earthen berms and dikes on the property that alter and distort the natural contours of the land and provide a breeding ground for mosquitoes.

This court reviews the district court's order granting summary judgment de novo, applying the same legal standard the district court applied. L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Moore argues that Texaco created a nuisance on the property and therefore owes Moore damages and is responsible for abatement of the nuisance.

Oklahoma law defines nuisance by statute as a class of wrongs arising from an unreasonable, unwarranted, or unlawful use by a person or entity of property lawfully possessed, but which works an obstruction or injury to the right of another. Okla. Stat. tit. 50, § 1; Briscoe v. Harper Oil Co., 702 P.2d 33, 36 (Okla. 1985). A public nuisance is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons." Okla. Stat. tit. 50, § 2. A private nuisance is every nuisance not included in the definition of a public nuisance. Id. § 3.

1. Public Nuisance

Moore's complaint includes a claim for public nuisance pursuant to Okla. Stat. tit. 27A, § 2-6-105(a). The district court did not expressly consider this claim. Section 2-6-105(a) states that "[i]t shall be unlawful for any person to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land or waters of this state. Any such action is hereby declared to be a public nuisance."

We have recognized that under Oklahoma law, a successor landowner may be entitled to pursue a claim for public nuisance against a predecessor responsible for groundwater pollution. See Tosco Corp. v. Koch Indus., Inc., 216 F.3d 886, 895-96 (10th Cir. 2000). Here, however, Moore's claim fails because he has failed to show that Texaco caused pollution or damage to the property.

A nuisance "consists in unlawfully _doing_ an act, or _omitting_ to perform a _duty_." Okla. Stat. tit. 50, § 1 (emphasis added). Moore presented no evidence that Texaco did anything to cause the pollution on the property. The affidavits of Moore's experts, Gerald Wollaston and Billy Tucker, recite in conclusory terms that Texaco was responsible for the pollution; however, these affidavits contain no factual basis sufficient to justify this conclusion. Cf. Tosco, 216 F.3d at 892 n.2 (setting out factual basis for conclusion that defendant was responsible for pollution of property, including defendant's own documents showing it could not account for a significant portion of its daily throughput of hazardous waste products when it operated facility). [3]

In his reply brief, Moore argues that causation may be shown by Texaco's "oil field" operations on the land. Appellant's Reply Br. at 2-3. Although Texaco retained the mineral rights in Moore's land, Moore did not point to any evidence that the pollution to his land was caused by Texaco's exploitation of those rights; rather, Moore's focus was on Texaco's tank farm operations. See, e.g., Appellant's Br. at 24 ("In fact, it should be enough that pollution was found on Plaintiff's land, that Texaco operated tank farms on the land prior to the

---

[3] Texaco could also have been liable for a public nuisance if it knew of subsurface and groundwater pollution caused by a third person prior to its sale of the property and failed to take reasonable measures to abate it. See Restatement (Second) of Torts §§ 839, 840A cmt. "d" (1979). Moore failed to present evidence that Texaco had such knowledge, however.

pollution being found and that evidence shows that the pollution was caused by the operation of the tank and pipelines.").

Moore's experts flirt with application of a form of "res ipsa loquitur," insisting that Texaco controlled the tank farm and that therefore only Texaco could be responsible for the pollution. See Appellant's App., Vol. I at 165. Assuming that doctrine applies in the public nuisance context, a necessary element of "res ipsa loquitur" is a showing that "the event was caused by an instrumentality in the defendant's exclusive control." Nat'l Tel. Coop. Ass'n v. Exxon Corp., 38 F. Supp. 2d 1, 10 n.3 (D.D.C. 1998) (emphasis added). The tank farm existed and was operated on the property before Texaco acquired it in 1915. Since there is no specific evidence that the spills occurred during the time Texaco operated the tank farm, any argument that this element is satisfied begs the question.

Because Texaco was the only defendant in this case, we do not consider whether "res ipsa loquitur" would have applied if all the parties who might have caused the pollution had been named as defendants. See Qualls v. United States Elevator Co., 863 P.2d 457, 462 n.21 (Okla. 1993) (noting with seeming approval that "[o]ther jurisdictions have held res ipsa loquitur invocable against two or more defendants exercising joint or successive control of the instrumentality causing the injury"). We conclude that Moore failed to produce evidence,

sufficient to survive summary judgment, that any act or omission by Texaco caused a public nuisance in this case.

2.      Private nuisance

In addition to the lack of evidence noted above, Moore's claim for private nuisance, based on pollution and the erection of the earthen berms, cannot proceed because he is a successor landowner to Texaco, rather than an adjacent landowner.  It is likely that Oklahoma would reach the same conclusion reached by nearly every other court to consider the issue:  that an action for private nuisance is designed to protect neighboring landowners from conflicting uses of property, not successor landowners from conditions on the land they purchased. See, e.g. , Philadelphia Elec. Co. v. Hercules, Inc. , 762 F.2d 303 (3d Cir. 1985); Andritz Sprout-Bauer, Inc. v. Beazer East, Inc. , 174 F.R.D. 609, 626 (M.D. Pa. 1997) (applying Virginia law);  Lilly Indus., Inc. v. Health-Chem Corp. , 974 F. Supp. 702, 706-08 (S.D. Ind. 1997) (applying Indiana law);  Cross Oil Co. v. Phillips Petroleum Co. , 944 F. Supp. 787, 792-93 (E.D. Mo. 1996) (applying Missouri law);  Dartron Corp. v. Uniroyal Chem. Co. , 893 F. Supp. 730, 741 (N.D. Ohio 1995) (applying Ohio law);  55 Motor Ave. Co. v. Liberty Indus. Finishing Corp. , 885 F. Supp. 410, 421-22 (E.D.N.Y. 1994) (applying New York law);  Mayor & Council of Rockaway v. Klockner & Klockner , 811 F. Supp. 1039, 1057-58 (D.N.J. 1993) (applying New Jersey law).   But see  Mangini v. Aerojet-

Gen. Corp. , 281 Cal. Rptr. 827, 833 (Cal. Ct. App. 1991) (recognizing availability of private nuisance suit against subsequent landowner under broadly-worded California law).

3.      Negligence

The same factors discussed above require affirmance of summary judgment for Texaco on Moore's negligence claim. Moore cites no Oklahoma authority that would make a landowner liable to a subsequent landowner for negligently polluting land prior to the sale. He contends that Texaco committed negligence per se by violating certain statutes pertaining to water pollution; however, as noted above, there is no proof that Texaco actually violated any statute or caused any pollution. It was Moore's responsibility to provide such proof to avoid the entry of summary judgment against him.      See Celotex Corp. v. Catrett , 477 U.S. 317, 324 (1986). Finally, for the same reasons cited above, res ipsa loquitur does not apply to the negligence claim.

4.      Trespass

Under Oklahoma law, "[t]respass involves an actual physical invasion of the real estate  of another  without the permission of the person lawfully entitled to possession." Williamson v. Fowler Toyota, Inc.    , 956 P.2d 858, 862 (Okla. 1998) (emphasis added). It is clear that the claimed pollution here does not qualify as

a trespass under this standard. Moore has presented no evidence that the pollution occurred after Texaco sold the property. Rather, Moore's argument is that the pollution occurred while Texaco owned the property. This being the case, it did not involve a physical invasion of real estate owned by anyone except Texaco itself. This is not a trespass. See, e.g., Cross Oil Co., 944 F. Supp. at 793 (applying Missouri law).

Moore argues that Cross Oil should be distinguished because here, Texaco retained the mineral estate. The alleged trespass, however, does not involve the reserved mineral estate. We reject the purported distinction drawn by Moore.

### 5. Abatement

Moore claims he is entitled to abatement of the nuisance caused by Texaco. Moore has failed to establish that Texaco created a public nuisance on the property, or that it could be held liable to successor landowner Moore for creation of a private nuisance. This being the case, he is not entitled to abatement.

### 6. Unjust Enrichment

Moore argues that Texaco has been unjustly enriched by avoiding the costs associated with remediation of the pollution it caused. The performance of another's statutory duty to remediate pollution can give rise to a claim for unjust enrichment. Cf. Clay v. Indep. Sch. Dist. No. 1 of Tulsa County, 935 P.2d 294,

316 n.40 (Okla. 1997) (Opala, J., dissenting).  Here, however, such a claim does not arise, because Moore has failed to show that Texaco caused any pollution or that it has any responsibility for cleaning up the pollution on the property.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.  Appellant's motion to file a supplemental brief in this matter is denied.