[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13753

_____

5200 ENTERPRISES LIMITED,

Plaintiff-Appellant,

*versus*

CITY OF NEW YORK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-bk-01646-JAF

_____

Before JORDAN, NEWSOM, and ED CARNES, Circuit Judges.

NEWSOM, Circuit Judge:

In the mid-1980s, a single-asset real estate entity called 5200 Enterprises Limited bought a piece of property in Brooklyn. To its consternation, it later learned that the property had been contaminated sometime between 1940 and 1950 by its then-owner, the City of New York.

As part of an ongoing bankruptcy proceeding, 5200 Enterprises filed an adversary proceeding contending (1) that the City's earlier contamination constitutes a "continuing trespass" on the property, and (2) that the City improperly assessed property taxes. We must first address 5200 Enterprises' trespass claim. We must then decide whether 5200 Enterprises may use its bankruptcy proceeding to challenge property taxes levied against it long ago. Finding 5200 Enterprises' trespass claim barred by the statute of limitations and its property-tax challenge foreclosed by federal law, we affirm the bankruptcy court's order dismissing its adversary proceeding.

I

In the early 1900s, the City of New York used a powerhouse in Brooklyn to provide electricity for its trolley system. The City gave up on trolleys in the 1930s, which eliminated its need for the powerhouse. Soon thereafter, in 1940, the City took ownership of the property where the power plant sat and—sometime during the ensuing decade—dismantled the plant. As part of that

deconstruction, the City removed a smokestack, placed it in the basement of the building—directly on top of a mechanical system that, as it turns out, was insulated with friable asbestos-containing material—and buried it under a concrete slab. In 1951, the City sold the property to a third party, which, in turn, sold it to 5200 Enterprises in 1986.

Less than a year after 5200 Enterprises bought the property, the City began negotiations to lease it. In connection with those negotiations, the City conducted an asbestos inspection, which revealed that the property was contaminated with PCBs. Based on that discovery, the State of New York placed the property on its Registry of Inactive Hazardous Waste Disposal Sites, indicating that the property posed a significant threat to public health or the environment. That designation rendered the property effectively worthless.

The State began remediation of the property in 2015. It was only then—during a pre-demolition sampling—that the buried smokestack was uncovered, along with the friable asbestos-containing material underneath it.[1] That discovery required a variance in the remediation proposal, postponing the project indefinitely.

Throughout the entirety of 5200 Enterprises' ownership, the City taxed the property according to its "best intended use" as a

---

[1] Although the 1987 inspection found PCBs, none were discovered under the concrete slab until the later sampling was taken.

commercial and industrial warehouse, rather than assessing the property according to its present, contaminated condition. But during the 30-plus years in which taxes were assessed on the property, 5200 Enterprises purported to challenge only one of those tax bills—and even then, it failed to prosecute the action by filing a Note of Issue. Rather than paying the taxes or properly challenging their validity, 5200 Enterprises elected to ignore them. As a result, the taxes became liens on the property.

In 2018, 5200 Enterprises filed for Chapter 11 bankruptcy. It thereafter initiated an adversary proceeding against the City in bankruptcy court. In its complaint, 5200 Enterprises (1) asserted a cause of action against the City for "continuous trespass," and (2) sought a declaratory judgment that the City (a) is responsible for the hazardous waste on the property and the damage that it has caused and (b) improperly taxed the property according to its "best intended use" rather than as if it were worthless.

The City moved to dismiss the complaint for failure to state a claim under Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6). The City argued that the trespass claim failed both (1) because it was not cognizable under New York law and (2) because it was time barred. Separately, the City contended that the Bankruptcy Code precluded 5200 Enterprises' challenge to the decades-old tax assessments because the period to contest them had expired under the applicable nonbankruptcy law.

The bankruptcy court granted the City's motion and dismissed the adversary proceeding with prejudice. It held that 5200 Enterprises' continuous-trespass theory wasn't cognizable under New York law and that the Bankruptcy Code barred 5200 Enterprises' challenge to the allegedly improper property taxes.

5200 Enterprises sought certification to appeal directly to this Court on the ground that its complaint presented an issue of first impression under New York law. *See* 28 U.S.C. § 158(d)(2); Fed. R. Bankr. P. 8006(f). The City didn't object, the district court certified the request, and a motions panel of this Court granted it.

Once before this Court, 5200 Enterprises moved to stay the briefing schedule and to certify the continuing-trespass question to the New York Court of Appeals. We denied the motion to stay the briefing schedule and carried the motion to certify with the case. We now deny the motion to certify and affirm the bankruptcy court's order dismissing 5200 Enterprises' complaint.[2]

## II

We divide our discussion into two parts. First, we address 5200 Enterprises' continuing-trespass claim. Second, we consider

---

[2] 5200 Enterprises asks us to certify to the New York Court of Appeals the question whether it has stated a claim for continuing trespass. But because we find that we needn't reach the state-law question in resolving the case, we needn't certify it either. *See Royal Cap. Dev., LLC v. Md. Cas. Co.*, 659 F.3d 1050, 1054 (11th Cir. 2011) ("[C]ertification of state law questions is a matter of discretion.").

6                    Opinion of the Court                    20-13753

whether the Bankruptcy Code precludes 5200 Enterprises from challenging allegedly improper property taxes in the course of its bankruptcy proceeding.[3]

## A

According to 5200 Enterprises' complaint, the allegations of which we take as true for present purposes, the City contaminated the property that 5200 Enterprises now owns when the City lawfully possessed it. Because that contamination remains today, 5200 Enterprises contends that the City is "continuous[ly] trespass[ing]" on its property. But because any claim that 5200 Enterprises might have had is barred by the statute of limitations, we elect not to reach the merits of its continuing-trespass theory.[4]

Whether New York law recognizes 5200 Enterprises' continuing-trespass theory of liability is an open question. *See 55*

---

[3] "We review de novo a district court's order granting a motion to dismiss for failure to state a claim." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). To survive a motion to dismiss, a plaintiff's complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the court "must accept as true all of the allegations contained in a complaint." *Id.*

[4] *See, e.g.*, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

*Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp. 410, 424 (E.D.N.Y. 1994) ("New York Courts have not addressed a trespass claim on facts similar to the instant case . . . ."). But even assuming that such a theory is viable in New York, 5200 Enterprises' claim is barred by the applicable statute of limitations.[5]

5200 Enterprises contends that a continuing trespass is a "recurring wrong[] that [is] not subject to any Statute of Limitations because [it] constantly accrue[s], thus giving rise to successive causes of action." Reply Br. of Appellant at 7 (alterations adopted) (quoting *Jensen v. Gen. Elec. Co.*, 581 N.Y.S.2d 917, 918 (N.Y. App. Div. 1993)). That used to be the law in New York—traditionally, a continuing trespass operated as an "exception to the Statute of Limitations." *Jensen v. Gen. Elec. Co.*, 623 N.E.2d 547, 552 (N.Y. 1993). But the case on which 5200 Enterprises relies—the intermediate appellate court's *Jensen* decision—was subsequently reversed by the New York Court of Appeals, which expressly rejected 5200 Enterprises' premise. *Jensen*, 623 N.E.2d at 548 ("We conclude that the order of the Appellate Division should be modified by reversing so much as reinstated the plaintiffs' causes of action for damages based on continuing trespass and nuisance."). Instead, the Court of Appeals held that the state legislature had statutorily abrogated

---

[5] Accordingly, we elect not to address the unresolved question of New York law. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

"the judicially engrafted exception to the Statute of Limitations for continuing wrongs." *Id.* at 552.

By virtue of that abrogation, New York General Law § 50-i provides the applicable statute of limitations. That provision states that any action maintained against a municipality "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1). For "injury to property caused by the latent effects of exposure to any substance," § 50-i's statute of limitations begins to run only when the injury is discovered or should have been discovered "through the exercise of reasonable diligence." N.Y. C.P.L.R. § 214-c(3). Taken together, those provisions mean that 5200 Enterprises had to file suit within one year and 90 days from the date that it knew or had reason to know about its injury.

5200 Enterprises' president and sole shareholder conceded during discovery that he became aware of "the contamination of the property that would be the basis" for the suit against the City "when the contractor dug test pits in the basement of the building," which he "guess[ed]" occurred "sometime" in 2015 or 2016. The record shows that those pits were dug *before* the State of New York requested a variance in the remediation plan on July 27, 2015. 5200 Enterprises doesn't contest that—taking that testimony in conjunction with the variance request—the latest possible date on which it could have discovered its injury was July 27, 2015. 5200 Enterprises filed its bankruptcy petition on May 16, 2018—nearly three years

20-13753            Opinion of the Court            9

later.  Thus, even assuming the latest possible date of discovery—July 27, 2015—5200 Enterprises' trespass claim is time-barred.

## B

5200 Enterprises separately sought "to have the bankruptcy court review assessed *ad valorem* taxes."  Br. of Appellant at 33. 5200 Enterprises contended that the City incorrectly assessed taxes according to the property's "best intended use" rather than its "then present and contaminated condition," which rendered it "essentially worthless."  Compl. at ¶¶ 32–35.  The bankruptcy court dismissed that claim, holding that the Bankruptcy Abuse Prevention and Consumer Protection Act, 11 U.S.C. § 505(a)(2)(C), prohibited it from redetermining any of the assessments.

By its express terms, the BAPCPA precludes a bankruptcy court from redetermining "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired."  11 U.S.C. § 505(a)(2)(C).  5200 Enterprises concedes that § 505(a)(2)(C), if applicable, vitiates its tax-assessment claim.[6]  But it insists that applying § 505(a)(2)(C)—which was added to the

---

[6] The bankruptcy court thoroughly explained that the time for contesting the tax assessments under "applicable nonbankruptcy law"—which, here, is comprised of state and municipal laws governing the process by which an aggrieved New York City taxpayer may seek redress—long ago expired.  Because 5200 Enterprises does not contest that conclusion, we do not address it.

Bankruptcy Code in 2005, *see* Pub. L. No. 109-8, 119 Stat. 23, 124 (Apr. 20, 2005)— to pre-2005 taxes would give the statute improper retroactive effect. We disagree.

If an interpretation of a statute would cause it to "operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). But "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Id.* at 269 (citation omitted). Instead, a statute has "retroactive effect" only when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280.

Put simply, "retroactivity is to be judged with regard to the act or event that the statute is meant to regulate." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 264 (2012). It's obvious to us that § 505(a)(2)(C) is "meant to regulate" federal bankruptcy proceedings—not an individual's state or local tax liability. Accordingly, because 5200 Enterprises engaged in "the relevant conduct regulated by [§ 505(a)(2)(C)]"— its federal bankruptcy proceeding—"*after* the [statute's] effective date," the statute's application is prospective only. *Republic of Austria v. Altmann*, 541 U.S. 677, 697 & n.17 (2004) (quotation omitted).

5200 Enterprises nonetheless asserts that applying § 505(a)(2)(C) would impair (1) a preexisting "right to property," Br. of Appellant at 33, and (2) a "substantive right guaranteed" by the Constitution—namely, bankruptcy itself, Reply Br. of Appellant at 13. We reject both contentions.

As to the former, 5200 Enterprises offers no support for its assertion that "the right to contest *ad valorem* tax assessments" is "an offspring" of the general "right to property." Br. of Appellant at 33. And even assuming such a right existed, § 505(a)(2)(C) wouldn't "impair" it. *Landgraf*, 511 U.S. at 280. Any right that 5200 Enterprises possessed to contest its tax liability expired when it failed to do so through the proper means. At worst, then, § 505(a)(2)(C) merely fails to resuscitate that already-expired right.

5200 Enterprises' "substantive-right" argument fares no better. "There is no constitutional right to obtain a discharge of one's debts in bankruptcy." *United States v. Kras*, 409 U.S. 434, 446 (1973). To the contrary, "[t]he Constitution, art. I, § 8, cl. 4, merely authorizes Congress to establish uniform laws on the subject of Bankruptcies throughout the United States." *Id.* (cleaned up). And even if 5200 Enterprises has some "substantive" right at stake, it fails to explain how § 505(a)(2)(C) impairs it.

Applying § 505(a)(2)(C) in this case doesn't give it retroactive effect. Therefore, it applies and, as 5200 Enterprises has conceded, eliminates its claim concerning the City's allegedly improper taxes.

★　★　★

The bankruptcy court's dismissal of 5200 Enterprises' adversary complaint is **AFFIRMED**, and 5200 Enterprises' motion to certify the question of New York law to the New York Court of Appeals is **DENIED.**

20-13753                NEWSOM, J., Concurring                        1

NEWSOM, Circuit Judge, concurring:

Needless to say, I agree with the approach that the Court takes today, resolving 5200 Enterprises' appeal on statute-of-limitations grounds. It's clean, and it obviates any need to issue a precedential opinion on an open question of New York law. Nonetheless, because the "continuing trespass" issue has been fully briefed and argued—it was the focus of the parties' presentations—and because that issue might recur in future cases, I'll briefly explain why 5200 Enterprises' theory fails under New York law.

I

Although the question whether New York law recognizes 5200 Enterprises' continuing-trespass theory of liability is technically open, it isn't hard. New York caselaw—which sets out the elements of a trespass claim and explains how New York courts understand and apply the continuing-trespass doctrine—readily provides the answer: New York recognizes a concept of continuing trespass, but not the one that 5200 Enterprises advances here.

In New York, the "elements of a cause of action sounding in trespass are [1] an intentional entry [2] onto the land of another [3] without justification or permission." *Marone v. Kally*, 971 N.Y.S.2d 324, 327 (N.Y. App. Div. 2013) (quotation omitted). The traditional view in New York was that "trespasses upon real property, effected by an unlawful structure or nuisance, are *continuous* in their nature, and give successive causes of action from time to time, as the injuries are perpetrated." *Galway v. Metro. Elevated*

2                    NEWSOM, J., Concurring                    20-13753

*Ry. Co.*, 28 N.E. 479, 481 (N.Y. 1891) (emphasis added). To be clear, though, in New York, "continuing trespass" has never served as a distinct theory of liability; rather, it merely operated as an "exception to the Statute of Limitations." *Jensen v. Gen. Elec. Co.*, 623 N.E.2d 547, 552 (N.Y. 1993).[1] Accordingly, a "continuing trespass" must first be a trespass.

To state a claim, therefore, 5200 Enterprises must at a minimum allege an intentional entry "onto the land of another." *Marone*, 971 N.Y.S.2d at 327. It cannot do so. The injury from which it seeks relief—the City's contamination—occurred when the City owned and possessed the property. Simply put, a landowner can't trespass on its own property—it hasn't, in that circumstance, entered "onto the land of another." *Id.* Accordingly, 5200 Enterprises has failed to state a claim for trespass—continuing or otherwise. *Accord 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp. 410, 424 (E.D.N.Y. 1994).

5200 Enterprises resists that straightforward conclusion by pointing to the Restatement (Second) of Torts § 161 and a California case interpreting that provision. I am not persuaded.

Section 161 states that "[a] trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not

---

[1] As the Court explains, this exception has since been abrogated by statute and replaced with a discovery rule. *See* Majority Op. at 7–8; *see also Jensen*, 623 N.E.2d at 552.

the actor has the ability to remove it." Restatement (Second) of Torts § 161(1) (1965). One California court has interpreted § 161 to "sanction" a "continuing trespass theory in a situation" where "contaminants have been left on the property by a prior owner." *Newhall Land & Farming Co. v. Superior Ct.*, 19 Cal. App. 4th 334, 345 (Cal. Ct. App. 1993).

5200 Enterprises contends that a reviewing court must either endorse its theory of liability or reject what it calls "the 'Restatement' approach." Br. of Appellant at 26. But that's a false choice. We might have needed to reject *Newhall*'s interpretation of the Restatement to affirm the dismissal on the merits, but we wouldn't have needed to reject the Restatement itself.

Nothing in § 161 endorses a theory of trespass pursuant to which a landowner can incur continuing liability for contamination of its own property. All § 161 requires is that the trespassing "structure" or "other thing"—here the smokestack and the contamination that it created—have been "tortiously placed" on a parcel of land. Restatement (Second) of Torts § 161(1). The Restatement elsewhere defines "tortious" as "conduct which is carried on at the risk that the actor shall be subject to liability for harm caused thereby." *Id.* § 6. Obviously, "plac[ing]" some "thing" on another's land could subject the "place[r]" to tort liability. But 5200 Enterprises has failed to explain how the City, by contaminating its own property in the 1940s, would have subjected itself to tort liability.

It's therefore unsurprising that courts around the country have embraced § 161 while simultaneously rejecting 5200

4                    NEWSOM, J., Concurring                    20-13753

Enterprises' novel liability theory.[2]  And, as I've explained, that approach comports with both § 161's plain language and, more importantly, New York's common-law trespass principles.

Accordingly, I agree with the "[c]ourts around the nation [that] have rejected . . . efforts to sue someone for having trespassed on what was his or her own property at the time the action was taken." *Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 708 (S.D. Ind. 1997) (collecting cases).  "[B]ecause an essential element of a claim for trespass"—the unlawful entry *onto the land of another*—"has not been alleged" here, 5200 Enterprises has failed to state a claim upon which relief can be granted under New York law.  *55 Motor*, 885 F. Supp. at 424.

---

[2] *See, e.g.*, *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 189–90 (Md. 1994) (holding that "[§] 161 does not support [the plaintiff's] position" that the defendant "committed a trespass when it allegedly caused the property to be contaminated during its occupancy and the contamination continued into [the plaintiff's] occupancy of the land"); *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1233 (10th Cir. 2001) (applying Oklahoma law, which has embraced § 161, *see Angier v. Mathews Expl. Corp.*, 905 P.2d 826, 830 (Okla. Civ. App. 1995), and concluding that the defendant's pollution was "not a trespass" because the pollution occurred when the defendant "owned the property" and thus "did not involve a physical invasion of real estate owned by anyone except [the defendant] itself"); *Triffler v. Hopf*, No. 92 C 7193, 1994 WL 643237, at *7 (N.D. Ill. Nov. 4, 1994) (applying Illinois law, embracing the Restatement's continuing-trespass definition, and concluding that a "prior land owner can simply not be held liable under a theory of continuing trespass for items he left *on his own property*").