OSCN Found Document:CLARK, et. al v. MCGREGOR HOMES, LLC, et al.

 

 
 CLARK, et. al v. MCGREGOR HOMES, LLC, et al.2026 OK CIV APP 10Case Number: 121850Decided: 04/30/2026Mandate Issued: 04/30/2026THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2026 OK CIV APP 10, __ P.3d __

 

SUBSTITUTE OPINION AFTER REHEARING
THE COURT'S PRIOR OPINION HAVING BEEN WITHDRAWN

THIS OPINION IS RELEASED FOR PUBLICATION BY ORDER OF
THE COURT OF CIVIL APPEALS

JARED CLARK, ERIN CLARK, ARMANDO CARRO, TAWNYA CARRO, BRIAN BLACK, GREG ROHDE, and JENNIFER ROHDE, Plaintiffs/Appellants,
vs.
MCGREGOR HOMES, LLC and COTTAGE GROVE, LLC,
Defendants/Appellees,
vs.
RED PLAINS PROFESSIONALS, INC., an Oklahoma for Profit Business Corporation, and THE CITY OF EDMOND, OKLAHOMA, a Municipal Corporation, Third-Party Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD OGDEN, TRIAL JUDGE

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS

Jacquelyn L. Dill
THE DILL LAW FIRM, P.C.
Oklahoma City, Oklahoma For Plaintiffs/Appellants

David M. Box
Cooper T. Hahn
BOX LAW GROUP, PLLC
Oklahoma City, Oklahoma

Mason J. Schwartz
WILLIAMS, BOX,
FORSHEE & BULLARD, P.C.
Oklahoma City, Oklahoma For Defendants/Appellees

OPINION ON REHEARING BY JOHN F. FISCHER, JUDGE:

Plaintiffs/Appellants are current or former homeowners of Lots 25-28 of Block One (1), Section One (1), Cottage Grove Addition in Edmond, Oklahoma. 

Homeowners also appeal the district court's award of attorney fees and costs to Developer and Builder through a separately filed Amended Petition in Error. Homeowners' filing preserves one issue: the June 28, 2024 Journal Entry awarding fees and costs fails to comply with Fleig v. Landmark Construction Group, 2024 OK 25549 P.3d 120812 O.S.2021 § 940Fleig.

Lastly, Developer and Builder request appeal-related attorney fees pursuant to Okla. Sup. Ct. R. 1.14(b). 

BACKGROUND

In their Petition, Homeowners alleged that title to their Lots was provided free and clear of any sanitary sewer line easement, but that Developer and/or Builder placed sanitary sewer lines across the backyard of their Lots in violation of law. 

With their answer Developer and Builder pursued a third-party indemnification claim against Red Plains Professionals, Inc., the engineering company responsible for producing the plat drawings and corresponding development plans. Developer and Builder alleged that Engineer negligently failed to include and specify the utility easements on the final drawings submitted for the recorded final plat, and that to the extent Developer and Builder were found liable for Engineer's negligence, Engineer was obligated to indemnify and hold Developer and Builder harmless from any damages assessed against them. Developer and Builder also pressed for inclusion of the City of Edmond as a necessary party, asserting the City was the owner of the Lines after the City's approval and acceptance of the final plat in December 2014. 

Developer and Builder moved for summary judgment in September 2023, requesting judgment in their favor with respect to Homeowners' trespass and nuisance claims and their requests for temporary and permanent injunctive relief. Developer and Builder advanced several arguments in support of their motion. They argued that because the Lines were constructed during the development of the subdivision in a location approved by the City on the preliminary plans, 

In their response to Developer and Builder's summary judgment motion, Homeowners asserted that their request for injunctive relief was proper and likely to be granted. They denied that ownership of the Lines was transferred to the City through dedication and acceptance of the final plat but that, regardless, Builder caused the Lines to be located outside of an easement granted by Developer, and that Builder had an ongoing duty to remove the continuing trespass. Homeowners challenged Developer and Builder's contention that the City owned any easement by necessity or implication. 

Developer and Builder's reply in support of their summary judgment motion attached new evidentiary material -- an "As-Built Survey" -- which "attests that '[the Lines were] constructed in accordance with the [preliminary plans] and all City of Edmond and Oklahoma Department of Environmental Quality regulations." Submission of this As-Built Survey was to counter the affidavit of Homeowner's expert witness, Kelly Parker, engineer, wherein Mr. Parker opined that the as-built Lines "appear[ed] to vary from" the preliminary plans and were offensive to the City's ordinance which generally required utilities to be located along the rear portion of the subdivided lots and within twenty-foot easements.

Developer and Builder then filed a separate "Supplemental Filing of Exhibits to its Reply in Support of Defendants' Motion for Summary Judgment." This supplemental filing included another affidavit from Engineer. This additional affidavit sponsored the conclusions made in Developer and Builder's reply concerning the As-Built Survey, and disputed Mr. Parker's affidavit. The supplemental filing also attached the affidavit of Stephen Lawrence, Director of Engineering for the City. Mr. Lawrence's affidavit stated that the City "took ownership of the Line[s] upon the City Council's acceptance of dedication of the Line[s] on or about December 8, 2014," that the Lines were installed in accordance with the preliminary plans "reviewed and approved by the City's Engineering Department on or about March 27, 2014," and that "[o]ther than the Final Plat . . . not indicating a Utility Easement over portions of the Line[s], the Line[s were] located and installed in conformance with the City's Ordinances and Subdivision Regulations."

Homeowners then filed their "Supplemental Filing of Exhibits to Their Response to Defendants' Motion for Summary Judgment," amending the affidavit of Kelly Parker to include additional information responsive to contentions made in Developer and Builder's reply and supplemental materials. In this amended affidavit, Mr. Parker maintained that the issues framed in the litigation were not "an engineering problem" but rather a "failed development process problem," i.e. Developer and Builder "failed to convey proper easements" for the Lots, which failure has detrimentally affected the Homeowners' use of their Lots.

At the district court's hearing on the summary judgment motion, the district court sustained Developer and Builder's motion for summary judgment with respect to Homeowners' trespass, nuisance, and injunctive relief claims, but denied summary judgment with respect to Homeowners' negligence-based claims, for failure of Developer and Builder to raise that issue in their summary judgment briefing. The December 11, 2023 Journal Entry reflected this disposition of Homeowners' claims. It was silent with respect to Developer and Builder's third-party claim for indemnity against Engineer and was silent with respect to any claim against City, as well. 

Homeowners' Petition in Error was filed on December 20, 2023, as an appeal from an "Interlocutory Order Appealable by Right." It was designated and assigned as such. Homeowners attached the Journal Entry as Exhibit A to their Petition in Error. Their Exhibit B (Summary of the Case) and Exhibit C (Issues to be Raised on Appeal) allege error, for various specified reasons, in the district court's granting of partial summary judgment on their "claims for injunctive relief and trespass." Homeowners dismissed their negligence claim without prejudice the day after filing their Petition in Error. Homeowners as well as Developer and Builder have submitted briefs on appeal.

After the appellate record had been assembled, the briefing had been completed and the case assigned to this Court, Homeowners filed an Amended Petition in Error attaching an order awarding Developer and Builder prevailing party attorney fees and costs pursuant to 12 O.S.2021 § 940

SCOPE OF APPELLATE REVIEW

Appellate jurisdiction includes review of "final orders, judgments, an enumerated class of interlocutory orders, and a separate class of interlocutory orders where the exercise of appellate jurisdiction is discretionary." In re Guardianship of Berry, 2014 OK 56335 P.3d 779See also Raven Res., LLC v. Legacy Bank, 2009 OK CIV APP 101229 P.3d 127312 O.S.2021 § 952See also House v. Town of Dickson, 2007 OK 57193 P.3d 96412 O.S. § 95212 O.S. § 994W. Heights Indep. Sch. Dist. No. I-41 of Oklahoma Cnty. v. State ex rel. Oklahoma State Dep't of Educ., 2022 OK 79518 P.3d 531

Homeowners' request does impermissibly broaden the scope of their interlocutory appeal beyond the authorizing statute, 12 O.S.2021 § 952Western Heights, where the substance of an interlocutory order contains "both adjudications of issues that are immediately appealable and adjudications on other issues that are not immediately appealable, then only the former part of the order is immediately appealable." Id. ¶ 21, 518 P.3d at 541. Consequently, we review the district court's denial of Homeowners' other underlying claims "to such extent [the disposition] may be construed . . . within a context of a request for . . . injunctive relief." Id. ¶ 23, 518 P.3d at 541.

We address Homeowners' separate request for reversal of the fee award and Developer and Builder's request for appeal-related attorney fees at Part III of this Opinion.

STANDARD OF REVIEW

Appellate courts do not disturb orders granting or refusing an injunction "unless there is a showing that the court abused its discretion or that the judgment is clearly against the weight of the evidence." First Am. Bank & Trust Co., Purcell, Oklahoma v. Sawyer, 1993 OK CIV APP 115865 P.2d 347Johnson v. Ward, 1975 OK 129541 P.2d 182Latigo Oil & Gas, Inc. v. BP Am. Prod. Co., 2024 OK 35549 P.3d 1252Id. ¶ 16, 549 P.3d at 1257. Any underlying questions of law receive de novo review. Id.

ANALYSIS

An injunction "is a command to refrain from a particular act." 12 O.S.2021 § 1381Okla. Call for Reproductive Justice v. Drummond, 2023 OK 11543 P.3d 11012 O.S.2021 § 1381Okla. Call for Reproductive Justice, 2023 OK 111

I. The Nature of the Right Sought to be Protected

Before we can determine whether injunctive relief was properly denied, we must examine the nature of the right Homeowners sought to protect. Glenn v. Fox, 1993 OK CIV APP 26853 P.2d 779Okla. Pub. Emps. Ass'n v. Okla. Dept. of Cent. Svcs., 2002 OK 7155 P.3d 1072See also 42 Am. Jur. 2d Injunctions § 2. But a mandatory injunction "commands the performance of some positive act." Owens v. Zumwalt, 2022 OK 14Id. ¶ 8, 503 P.3d at 1214. The party requesting the mandatory injunction must show a clear right's violation "and a case of necessity and great hardship," where other adequate redress cannot be afforded. Id.

Homeowners' request is in the nature of a mandatory injunction and must be more strictly construed than if the request were preventative or prohibitive in nature.

II. Merits of the Controversy

To lodge a successful challenge to the denial of a permanent injunction a plaintiff must show entitlement to actual success on the merits, irreparable harm if the injunction is denied, that the threatened injury outweighs any injury the opposing party will suffer under the injunction, and that the injunction is in the public interest. Crystal Bay Estates Homeowners' Ass'n, Inc. v. Cox, 2022 OK CIV APP 38521 P.3d 812

A. Ownership of the Lines

Developer and Builder maintain that, because the Lines were constructed during development of the subdivision in the exact location approved by the City and were intended to appear on and be dedicated to the City in its acceptance of the Final Plat in 2014, none of Homeowners' claims, including mandatory injunctive relief, may be pressed against them since they are not the owners or operators of the Lines. The question of ownership of the Lines is a question of law which we review de novo. "Oklahoma case law clearly recognizes two types of dedications of land for public purposes: 'First, statutory; and, second, implied or dedications at common law.'" Bowen v. Tucker, 2007 OK CIV APP 57164 P.3d 1155Henry v. Ionic Petro. Co., 1964 OK 37391 P.2d 792Siegenthaler v. Newton, 1935 OK 99850 P.2d 192Henry, 1964 OK 37Id. Put another way,

To constitute a dedication of land, or an easement therein, to the public, two things are necessary: An intention by the owner clearly indicated in words or acts to dedicate the land to the public use; and an effective acceptance of the dedication by or for the public, by reliance placed thereon, or by user, or otherwise.

Bowen, 2007 OK CIV APP 57Bd. Of Cnty. Comm'rs of Garfield Cnty. v. Anderson, 1934 OK 629 P.2d 75

The record reveals that the Lines were constructed in 2014 during the development of the Cottage Grove subdivision in the location depicted on the March 2014 preliminary plans. The Lines were installed on land owned by Developer prior to approval of the Final Plat and prior to the sale of the Lots to Homeowners (or their predecessors in interest). The meeting minutes from the City Council's December 8, 2014 council meeting reflect the following agenda item, which was approved and accepted that same day:

Item

Consideration of Acceptance of Final Plat, Improvements and Maintenance Bonds for Cottage Grove

Background

Water lines, sanitary sewer lines, paving, and a portion of the drainage improvements have been completed and are ready for acceptance with the required maintenance bonds . . . .

The Final Plat bears Developer's certificate of ownership and dedication as well as City's December 8, 2014 acceptance of the dedication. Consistent with the language appearing on the Final Plat, Developer and Builder alleged in their third-party petition, and City admitted in its answer, that the Lines were dedicated to City. Developer and Builder's undisputed evidence was that the Lines had been connected to the City's sewer system since their original construction in 2014 and remained part of City's public sewer system. Homeowners admitted that their homes are four of the twenty-two lots serviced by the Lines.

These facts collectively demonstrate Developer's intent, as then-owner of the realty, to dedicate the already-installed Lines for public use. They also demonstrate City's (and Homeowners') use and reliance thereon. An implied common-law dedication of the Lines arose by operation of law. The district court's conclusion that the Lines had previously been dedicated to and accepted by City prior to Homeowners' ownership of their Lots was not in error.

B. Actual Success on the Merits

Homeowners' position is that Developer and Builder are "under a duty to remove" the Lines which represent a continuing trespass. They cite to the Restatement (Second) of Torts, sections 158 and 161 in support of their argument:

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . . fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts, § 158.

"[a] trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it."

Id. § 161 (emphasis added).

A trespass is the actual physical invasion of another's property without permission. Frank v. Mayberry, 1999 OK 63985 P.2d 773See, e.g., Restatement (Second) of Torts, § 160, comment d; Davilla v. Enable Midstream Partners L.P., 913 F.3d 959, 969 (considering Oklahoma law and Restatement (Second) of Torts, § 160 in concluding that it is the expiration of an easement which creates the duty to remove the "thing" placed upon the lands of another).

Homeowners also premised their request for injunctive relief upon the occurrence of a nuisance. A "nuisance consists in unlawfully doing an act, or omitting to perform a duty, which ... annoys, injures or endangers the comfort, repose, health, or safety of others." 50 O.S.2021 § 1See, e.g., Moore v. Texaco, Inc., 244 F.3d 1229, 1232-33 (10th Cir. 2001) (discussing cases from other states outside of Oklahoma and determining it likely that Oklahoma would reach the same conclusion as "nearly every other court to consider the issue: that an action for private nuisance is designed to protect neighboring landowners from conflicting uses of property, not successor landowners from conditions on land they purchased."). We agree with the Tenth Circuit's conclusion. The Plaintiffs' nuisance claim fails because: (1) the Developer did not engage in an "unlawful act" when initially installing the sewer line -- it had to be located somewhere as evidenced by the Plaintiffs' use of the line since purchasing the property, and (2) a nuisance claim does not protect successor landowners like the Plaintiffs from the conditions existing on the land when they completed their purchase.

C. The Public Interest Consideration

Developer and Builder asserted that any mandatory injunction ordering relocation of the Lines would affect not only the Homeowners' Lots, but also every other homeowner in the subdivision whose sewer lines were tied into the Lines traversing the subsurface of Homeowners' Lots. Homeowners admitted that their Lots and the lots of eighteen other homes in the subdivision were provided the benefits of indoor plumbing and access to City's sewer system through existence of the Lines. Based upon this evidence, and bearing in mind that the issuance of an injunction is an extraordinary remedy, we cannot conclude that it would have advanced the public interest for the district court to have issued a mandatory injunction requiring the Developer and/or Builder to relocate the Lines, meanwhile disrupting the indoor plumbing and access to sewer services of eighteen other homeowners not party to the suit.

III. The Fee and Cost Award

Homeowners' Amended Petition in Error, filed on July 5, 2024, was filed after the record was assembled and the parties' appellate briefing was complete. At "Part V. RECORD ON APPEAL," the Amended Petition in Error states that the "Record is concurrently filed as required by Rule 1.34 (Driver's License Appeals, etc.) or Rule 1.36 (Summary judgments and motions to dismiss granted)." Yet Homeowners' amended designation of record identified eleven district court filings related to Developer and Builder's application for attorney fees and costs and Homeowners' motion to stay proceedings pending appeal. These designated filings were never made part of the record on appeal, nor, of course, based on timing, was any argument in the appellate briefing made concerning the limited issues identified in the Amended Petition in Error.

Oklahoma Supreme Court Rule 1.26 addresses the filings of amended, premature, and supplemental petitions in error. It provides at subsection (a) that a "petition in error may be amended at any time before brief-in-chief is filed, or thereafter by leave of Court." But it also provides at subsection (d) that an "amended petition in error to challenge a post-trial order granting or denying costs, interest, or attorney's fees must be filed . . . within thirty (30) days of the date of the post-trial order challenged." Homeowners complied with the thirty-day timing requirement for filing an amended petition in error under Rule 1.26(d).

However, Oklahoma Supreme Court Rule 1.34(g) provides that the appealing party "bears responsibility to ensure timely preparation of an adequate record to review the issues urged by that party. The appealing party must timely order and pay for transcripts, designate [the] record, monitor proper completion in the trial court, and request any extension of time if necessary for the performance of duties of the court reporter or district court clerk." Id.

Those items Homeowners identified in their Amended Designation of Record were required to be ready for completion on or before six months from the filing of the June 28, 2024 Journal Entry awarding fees and costs to Developer and Builder. Yet the supplemental record had not been completed by the time this Court issued its (now withdrawn) Opinion on November 20, 2025, and the record remains incomplete. It was Homeowners' "undivided responsibility" to produce the appellate record necessary to show the district court's error. Evans v. Greer, 2025 OK 89581 P.3d 101Id. The June 28, 2024 Journal Entry's award of fees and costs is affirmed insofar as it establishes Developer and Builder's entitlement to fees and costs.

However, Homeowners' Amended Petition in Error does preserve one issue without resort to filings absent from the record; the June 28, 2024 Journal Entry awarding fees and costs fails to comply with Fleig v. Landmark Construction Group, 2024 OK 25549 P.3d 1208Id. ¶ 14, 549 P.3d at 1211. The Journal Entry's failure to comply with the requirements of Fleig is evident from the face of the Journal Entry itself, a certified copy of which was attached as Exhibit A to Homeowners' Amended Petition in Error. That part of the Journal Entry determining the amount of the attorney fees and costs award is vacated and this case is remanded with instructions to enter an order complying with the holding in Fleig. 

Because we affirm that portion of the district court's order finding entitlement to fees pursuant to 12 O.S.2021 § 940Friend v. Friend, 2022 OK 29506 P.3d 1092

CONCLUSION

The district court's conclusion to deny mandatory injunctive relief requiring Developer and/or Builder to relocate the Lines is not against the clear weight of the evidence, and we therefore affirm the December 11, 2023 decision of the district court.

We further affirm that part of the June 28, 2024 Journal Entry awarding fees and costs to Developer and Builder insofar as it establishes Developer and Builder's entitlement to fees and costs. That portion of the Journal Entry determining the amount of the award is vacated and remanded for entry of an order complying with the holding in Fleig. The matter is further remanded for the district court's determination of an amount to be awarded for appeal-related attorney fees.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

WISEMAN, P.J. and BLACKWELL, J., concur.

FOOTNOTES

Hadnot v. Shaw, 1992 OK 21826 P.2d 978

Kraszewski v. Baptist Medical Center of Oklahoma, Inc., 1996 OK 141916 P.2d 241Lockhart v. Loosen, 1997 OK 103943 P.2d 1074

All the other arguments that were made by [Builder] and [Developer] as to whether or not there could be an easement by necessity, whether or not this could be rectified by condemnation, whether or not this could be addressed by monetary damages versus injunctive relief, those are all claims that The City of Edmond perhaps would have, but not [Builder] . . . [A]t least as pled right now [there are] no claims that [Homeowners] would have against [Builder].

. . . .

Again, my ruling pertains to the [Homeowners'] claims against [Developer and Builder]. As things are currently pled, that does not mean that, you know, plaintiffs don't exist. It just means that the claims don't exist pursuant to [Homeowners] versus [Developer and Builder].

Homeowners then made oral motion for leave to amend the pleadings to include additional defendants and claims. The district court responded that such a request would need to either be by agreement or by court order. The record as designated reveals no further action on this request by Homeowners.

See W. Heights Indep. Sch. Dist. No. I-41 of Oklahoma Cnty. v. State ex rel. Oklahoma State Dep't of Educ., 2022 OK 79

Moore v. Texaco, Inc., 244 F.3d 1229, 1233 (10th Cir. 2001). Accord 75 Am. Jur. 2d Trespass § 32 ("To maintain an action of trespass, the plaintiff must have had . . . possession of the real property in question at the time when the alleged trespass occurred") (emphasis added); Williamson v. Fowler Toyota, Inc., 1998 OK 14956 P.2d 858

An exception arises where the "trespass is continuous in character and has not ceased at the time when the property is conveyed to the plaintiff . . . ." 75 Am. Jur. 2d Trespass § 32. (emphasis added). Because there was no trespass of the Lines at the time of their placement upon the lands of another, there was no trespass which could have continuously failed to cease as a trespass upon ownership transfer.

conditioned upon the actor subsequently removing it, the termination of consent creates a duty to remove it from the land . . . ." Id.